IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

ALEXIS CARLETTE NORMAN,
an individual,

        PLAINTIFF,

v.

FEDERAL MEDICAL CENTER CARSWELL
A/K/A FMC-CARSWELL, a prison;
FEDERAL BUREAU OF PRISONS, an
agency;WARDEN MICHEAL SMITH, an
individual;ERICA SMITH-BRANTON,
an individual;STACY MALLARD,an
individual;STACY FLEINER, an
individual;UNIT MANAGER REX, an
individual, JOHN DAVID ORR, an
individual, UNT HEALTH PATIENT
SERVICES, et al.,

        DEFENDANTS,

COMPLAINT



**4-24CV-997-P**

Civil Action No.:_____

JURY TRIAL REQUESTED

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

OCT 1 6 2024

CLERK, U.S. DISTRICT COURT
By _____
      Deputy

COMES NOW the Plaintiff, ALEXIS CARLETTE NORMAN with her claims against the Defendants, as follows:

PARTIES/VENUE

1. Plaintiff, ALEXIS CARLETTE NORMAN, is over the age of nineteen (19) years old and resides at FMC Carswell in Fort Worth, Texas. She has exhausted her administrative remedies before instituting this civil suit.

2. Defendant, FEDERAL MEDICAL CENTER CARSWELL A/K/A FMC - Carswell (hereinafter "FMC-Carswell"), is the prison at which ALEXIS CARLETTE NORMAN was incarcerated in May and October 2022. FMC Carswell was the entity at which she received medical care that fell below the standard

of care, was denied the processing and submission of her CARES Act application, and was denied the calculation and application of "ALL" First Step Act (hereinafter "FSA") earned Time Credits. All actions was in violation of her constitutional rights, and in violation of the Law Enforcement Proviso of 28 U.S.C. §2680. Said prison is located in Tarrant County, Texas in the City of Fort Worth at the address of J Street Building 3000, zip code 76127.

3. Defendant, FEDERAL BUREAU OF PRISONS (hereinafter "BOP"), upon information, is the agency responsible for the operation of FMC Carswell The BOP was established by the United States Congress in 1934 within the United States Department of Justice. The United States Congress "charged the agency with the managment and regulation of all Federal penal and correctional institutions."(SEE, 1) FMC Carswell is one of those correctional institutions.

4. Defendants ERICA SMITH-BRANTON (hereinafter "SMITH-BRANTON"), STACY MALLARD (hereinafter "MALLARD"), STACY FLEINER (hereinafter "FLEINER"), UNIT MANAGER REX (hereinafter "REX"), and MICHAEL SMITH (hereinafter "WARDEN SMITH", upon information and belief, did provide or failed to properly supervise medical care to ALEXIS CARLETTE NORMAN that fell below or was below the standard of care as described herein, and upon information and belief did provide or failed to properly supervise case management actions and/or participated in actions and/or omissions that exceeded the scope of their authority under the CARES Act, the First Step Act(hereinafter "FSA"), and the Eigth Amendment of the United States Constitution by actively practicing deceit, racial discrimination misrepresentation, abuse of discretion, abuse of process and excessive confinement/false imprisonment. SMITH-BRANTON, MALLARD, FLEINER, REX, and WARDEN SMITH all worked at FMC Carswell in May and October 2022.

Defendant UNT Health Patient Services, a Texas Corporation (hereinafter "UNT") is contracted by the BOP to provide medical services to inmates housed at FMC Carswell. UNT served as the contractor provding medical services for patients requiring the services of a Neurologist. Defendant JOHN DAVID ORR, an individual, (hereinafter "ORR") provides Neurological Medical Services on behalf of UNT, upon information and belief did provide or failed to properly provide and/or supervise medical care to NORMAN that fell below or was below the standard of care as described herein

5.  Plaintiff avers that the matter in controversy exceeds seventy-five thousand dollars($75,000.00)

JURISDICTION:

6. Jurisdiction if found under the provision of 28 U.S.C. § 1331 in that a claim arises under federal law and that the United States Government, through its Bureau of Prisons and FMC-Carswell, is a defendant. Jurisdicti Jurisdiction is founded under the provisions of 28 U.S.C. § 1332(a) et seq., which grants this Court jurisdiction in civil actions on the basis of diversity of citizenship where the matter in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000.00). Also, jurisdiction is found under the provision of 28 U.S.C. § 2680(h), known as the "law enforcement proviso", waives sovereign immunity "with regard to acts or omissions of investigative or law enforcement officers for any claim arising out of false imprisonment, abuse of process, deceit, misrepresentation, libel, slander or interference with contract rights. (SEE, 2680(h). BOP employees have law enforcement authority as stated by the Supreme Court, (SEE, Ali v. FBOP 552 U.S. 214, 128 S. Ct. 831(2008) The above listed actions are not shielded by the discretionary function exception, thus giving this Court Jurisdiction.

STATEMENT OF FACTS

7. On or about October 28, 2022, ALEXIS CARLETTE NORMAN tested positive for the second time. After contracting Covid-19 on July 28, 2020, ALEXIS CARLETTE NORMAN (hereinafter "NORMAN"), who was previously healthy, was diagnosed with Severe Chronic Obstructive Pulmonary Disease (COPD), Gastro-Esophageal Reflux Disease(GERD), Respiratory Disorder, Unspecified SOB Shortness of Breath with exertion, Long Covid Disease, Headache, unspecified with white matter changes, Demyelinating Disease/Small Vessel Disease (damage to the brain and spinal cord), and High Cholesterol. However, while positive with Covid-19 for a second time, NORMAN was not seen by a doctor, although she requested to see a doctor several times,

and during the initial four(4) days of so called "medical isolation" NORMAN was not seen by any medical staff. During this second Covid-19 infection NORMAN complained of headaches, coughing, chest pains and excessiv mucus production. She requested Tylenol, Mucinex and the "Covid Pill" A/K/A Paxlovid, Veklury or Lageviro, via a sick call form and verbally on day (5) five, when medical staff, LVN Tucker, made rounds to inmates held in "medica isolation". NORMAN received only Tylenol, all her other requests were deniec and/or ignored. In response to NORMAN's request to see a doctor she was tolc the following, "there is no more seeing a doctor, if you get to sick to be here, you will go to the hospital. The best thing to do is get vaccinated ar and hope for the best. Oh, and by the way your lab results for your allergy test showed that you are allergic.....sorry," by LVN Tucker. NORMAN is not vaccinated due to a history of having adverse reactions to previous vac- cinations, her Mother's death 13 days after receiving the Pfizer Covid-19 Vaccine after developing a blood clot, and because she is allergic to Distearoyl-sn-glycero-3-phosphocholine, and ingredient in the Pfizer Covid-1! vaccine. Her allergic reaction causes facial and tongue swelling resulting ir her throat closing and her ability to breath being severely restricted and possibly stopped resulting in her immediate death. Therefore, NORMAN is not able to receive the Covid-19 vaccine. However, her status as a medically vunerable individual as a result of her medical diagnosis' should have resulted in NORMAN receiving a form of what is called the "Covid Pill" A/K/A Paxlovid, Veklury, or Lagevrio, but although BOP claims to have this medicat medication available, it was never offered to NORMAN as recommended by the CDC. As a result of not receiving and/or having access to antivirals recom- mended by the CDC for the medically vulnerable, NORMAN's medical conditions have worsened.

8. NORMAN was entrusted into the care and custody of the BOP on April 8,

2016 at the age of 44. NORMAN was healthy with no medical (physical) diagnosis. Prior to contracting Covid-19 NORMAN reported to sick only once in her five years of incarceration, as BOP medical records will confirm. After contracting Covid-19 in August 2020, NORMAN was diagnosed with Chronic Obstructive Pulmonary Disease (hereinafter "COPD"), Gastro-Esophageal Reflux Disease ( hereinafter "GERD"), and Headache, unspecified. Resulting in the following medications being prescribed; 1.)Albuterol Inhaler HFA(8.5gm), Mometasone Furoate Inhaler 220 MCG, Tiotropium Bromide Handi-haler 30 Cap 18 MCG inhaler, and Propanolol 25mg Tab.

9. On October 28, 2022, NORMAN tested positive for Covid-19 for the second time. As confirmed in NORMAN's BOP medical records, NORMAN reported to sick call multiple times after this second Covid -19 infection complaining of the following 1.)an increase in mucus production resulting in chest pain and increased difficulty breathing. 2.) an increase in the intensity and frequency of headaches/migraines. 3.)an increase in the use of her rescue inhaler (Albuterol Inhaler HFA(8.5gm), and 4.) an increase in obstruction in her nasal cavity and sinus cavity. NORMAN was seen by a Pulmonologist and received a complete series of Pulmonary Function Tests (hereinafter "PFT"). The results of the PFT showed that NORMAN was suffering from Severe COPD and Asthma. The Pulmonologists prescribed the following medications to help mitigate NORMAN'S symptoms; 1.) TRELEGY, an inhaler FDA approved specifically for individuals suffering with COPD. 2.) A Nebulizer, a machine that reduces Albuterol to a fine spray for use as a breathing treatment (three times a day). 3.) Albuterol Inhaler HFA (8.5gm), and 4.)Fluticasone Prop 50mcg, 16ml Nasal Spray. NORMAN's Care Level was increased from Care Level 1 to Care Level 2, and she was diagnosed with Long Covid Disease, Asthma and Severe COPD.

10. On October 28, 2022 NORMAN tested positive for Covid-19 for the second time. As confirmed in NORMAN'S BOP medical records NORMAN reported to sick to complain of an increase in intensity and frequency of headaches/ migraines. NORMAN received a second MRI following her secondCovid-19 infection, the findings stated that "there are moderate supratentorial T2 weighted T2 FLAIR hyperintense foci" with "moderate nonspecific supratentorial white matter changes that may represent small vessel ischemic change, demyelination, or sequela of migraine". In short the nerve lining (myelin ) has been damaged. When NORMAN was seen by the Neurologist on May 17, 2023, Dr. Orr stated the following"theMRI which I had reviewed before showed evidence of small vessel disease with punctat T2 changes which could also be migraine."

11. For over two years NORMAN has complained of pain associated with her migraines and has requested medication to help mitigate her symptoms. She was prescribed Aimovig, a preventive migraine medication and Atenolol and Propanolol, both Beta blockers. However, NORMAN has never been prescribed medications that are FDA approved specifically for individuals suffering with daily migraines such as NORMAN. Ubrelvy, Reyvow are acute medications that are FDA approved to treat migraines. These medications are oral tablets that block the calcitonin gene-related peptide(CGRP) recptor resulting in pain relief within two hours. These new class of medications have been offered to patients sufferring from migraine pain for nearly 5 years. Since 2010, the FDA has approved 8 medications for preventive and acute treatment for migraines. But the BOP does not and has not offered these medications to NORMAN for routine care of her migraines and all requests via administrative remedies have been denied. All in contrary to BOP Policy, which claims to provide medical care to NORMAN that is consistent and/or equal to the care that NORMAN would receive within the community.

12. NORMAN was assigned to a 13 x 15 square foot room occupied by 6 females. The room per BOP Policy should have been occupied by no morethan four females. The inability to adhere to BOP Policy regarding the number of inmates that should be assigned to a room/cell in a minimum security facility cultivated an environment that allowed NORMAN to be continously exposed to Covid-19 and infected for the second time with Covid-19. All of the women assigned to NORMAN'S room, 224(Camp West) tested positive for Covid-19. FMC Carswell's failure to follow BOP Policy and BOP Guidance Protocol for Covid-19 resulted in NORMAN'S second Covid-19 infection and irreparable harm to her health.

13. NORMAN'S second MRI, conducted outside of FMC Carswell, stated in the findings that Demyelinating Disease could NOT be ruled out. A Demyelinating Disease is any condition that results in damage to the protective covering (myelin sheath) that surrounds nerve fibers in the brain and spinal cord. Small Vessel Disease refers to a group of pathological processes with various aetiologies that affect the small arteries, arterioles, venules, and capillaries of the brain. Small Vessel Disease generally leads to a diagnosis of Dementia. Both Demyelinating Disease and Small Vessel Disease ultimately will disrupt optimal brain function.

14. NORMAN'S second Pulmonary Functioning Test ("PFT"), conducted outside of FMC Carswell after her second Covid-19 infection , stated in the findings "severe airflow obstruction, showing FEV1 of 52% only, low lung volumes, and hyper - inflation and air trapping" Interpretation "Severe Obstructive Airways Disease(COPD) and Asthma, and Long Covid Disease. COPD is a permanent, progressive, incurable and potentially disabling respiratory disease. It is characterized by persistent difficulty in expelling (exhaling) air from the lungs resulting in loss of lung function. Long Covid Disease or Post Covid Disease refers to long-term effects from a Covid-19 infection.

15. Covid-19, an infectious disease that caused a three year Global Pandemic, is now considered endemic, and unlike the FLU, some people never reclaim their preinfection health status after contracting Covid-19. The CDC has reported that a Covid-19 infection alone, regardless of the symptoms suffered by the infected individual, can cause irreparable harm to the health of those infected. Multiple studies conducted by the Mayo Clinic, John Hopkins Hospital and the CDC have confirmed that a Covid-19 infection can leave a person with permanent heart damage, lung damage, respiratory and pulmonary damage, nerve damage throughout the body and specifically nerve damage within the brain including a complete loss of brain function. After nearly 5 years of medical studies have warned of the damage done to the body of a person infected with Covid-19, and specifically the permanent injury inflicted upon the body of a previously healthy obese person. NORMAN'S BMI was 42.9 prior reinfection with Covid-19 and 39.9 prior to her initial Covid-19 infection. NORMAN was a high risk medically vulnerable person and should have received an antiviral medication within the first five days of Covid-19 infection per CDC Guidance.

16. FMC Carswell was one of the most in prisons in the country during the Covid-19 pandemic. FMC Carswell's local A.F.G.E. union filed a complaint with the offices of Senator John Cornyn and U.S. Congressman Marc Veasey to complain about the hazdous conditions at the facility and the "cavalier" attitude of the administration regarding the need to follow BOP Covid-19 Guidance/Protocol. District Courts around the country determined that the number of Covid-19 cases and the conditions at the facility were grounds for compassionate release. The Department of Justice office of the Inspector General and the CDC have reported that the configuration of prisons like FMC Carswell and the congregated environment make social distancing "impossible". Furthermore, the ventilation system throughout

the facility and at the camp do not meet the standards required by BOP Policy and OSHA Regulations. Covid-19 is transmitted from person to person mainly through respiratory droplets. Adequate ventilation in the facility is essential mitigating inmate exposure to any infectious airborne disease. Failure to update the facility as required by BOP Policy, OSHA Regulations and CDC guidance in combination with the failure to transfer NORMAN to home confinement fo allow her to practice optimal infection prevention control measures. Denied NORMAN the opportunity to keep herself safe from Covid-19 reinfection and increased her risk to contracting Covid-19 again.

17. FMC CARSWELL was previously accredited by the Joint Commissions, facility 242703, for Behavior Health, Nursing Home, and Ambulatory Healthcare Center, but the Joint Commissions accrediation expired on December 21, 2020, and has not been reinstated due to the many issues plaguing the facility. The Department of Justice Office of Inspector General has submitted multiple reports detailing the conditions of BOP facilities including the infrastructure, presence of mold throughot facilities, presence of asbestos, contaminated water systems and excessive staff shortages throughout BOP. THE Office of Inspector General (hereinafter "OIG") has also reported on the fraud, corruption and falsification of documentation of BOP records regarding inspections and medical records. While the BOP is in the process of making many changes to improve the conditions and infrastructures of the buildings throughout the BOP, including FMC Carswell, which is currently operating at half capacity due to an active construction project at the camp. NORMAN a medically vulnerable inmate should not be exposed to hazardous living conditions in the interim..

18. Congress, in response to the Covid-19 Global Pandemic passed The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). The CARES Act authorizes the Director of the Bureau of Prisons (hereinafter "Director"), during the covered emergency period and upon a finding by the Attorney General that emergency conditions resulting from the Coronavirus Disease 2019, Covid-19, pandemic materially affect the functioning of the Bureau of Prisons(BOP), to lengthen the maximum amount of time for which a prisoner may be placed in home confinement. The CARES Act excluded inmates with a history of violence, gang affiliation, a conviction for a sexual offense, and a conviction related to terrorism.

19. In March 2020, several United States Senators urged the Attorney General and the Director to utilize available statutory authorities to transfer vulnerable prisoners to home confinement. Transferring these vulnerable prisoners to home confinement would remove them from an environment in whic which contagious viruses thrive due to the inherent risks of congregate settings and the unique restrictions that correctional custody places on an individual's ability to maintain an appropriate social distance, as well as permit them to undertake other measures to protect themselves in ways they are not able to do in secure custody. (SEE FR/vol.88, NO. 64).

20. The First Step of 2018, Public Law No. 115-391, was enacted into law on December 21, 2018. The First Step Act provides eligible inmates the opportunity to earn 10 to 15 days of time credits for every 30 days of successful participation in Evidence Based Recidivism Reduction Programs (hereinafter "EBRR") and Productive Activities (hereinafter "PA"). The FSA time credits, known as earned time credits(hereinafter "ETC") and Federal Time Credits (hereinafter "FTC"), can be applied toward prerelease placement, i.e. transfer to a Residential Reentry Center(hereinafter "RRC") or Home Confinement (hereinafter "HC") for service of the remaining portion

of an inmate's sentence or early transfer to supervised release, i.e., early satisfaction of the inmate's term of imprisonment .

21. The FSA made several important changes to the duration of federal prison sentences by providing an opportunity for NORMAN to meaningfully reduce her prison sentence by participating in EBRR Programs and PAs. The FSA provides mandatory statutory authority, stating that the "BOP" must transfer inmates to supervised release and/or prerelease custody, i.e home confinement. The FSA does not limit the earning of FTCs and/or ETCs to a monthly period. The unambiguous language of the FSA states that FTCs and/or ETCs are earned at the rate of 10 to 15 days for "every" 30 days of successful participation in EBRR and PA Programs. There is no evidence in the statutory framework restricting the ability to earn FTCs and/or ETCs to ONLY 10 or 15 days a month. Which equals only 180 days ofFTCs and/or ETCs a year. Totaling only 3,995 FTCs and/or ETCs for NORMAN'S entire term of imprisonment.

22. NORMAN has earned FTCs and/or ETCs for programming and activities that she she participated in from December 21, 2018-January 14, 2020, and NORMAN has earned FTCs and ETCs for programs and/or activities that she has been "waiting" to participate in.. NORMAN was approved to participate in unstructured PAs via correspondence in addition to the programs and activit activities listed in the BOP FSA Program Manual. NORMAN has completed over 168 programs and/or classes and has earned FTCS and/or ETCs in excess of the time that she has remaining on her imposed prison sentence. There are 7,990 days remaining in NORMAN'S imposed prison sentence, and she has earned 8,340 FTCs and/or ETCs. NORMAN should have been transferred to home confinement prior to her second Covid-19 infection.

23. The BOP has been paid $75,000,000 each year beginning January 2019 through January 2023 to fully implement the FSA. The BOP has failed to fully implement the FSA as mandated by the staturtory deadline, which was two

years after a phase-in period, which was mandated to end on January 15, 2022. The BOP is not authorized to continue to delay the calculation and application of FSA FTCs and ETCs based on the date of release. The BOP's failure to respect the unambiguous language of the FSA is unlawful. The BOP continues to receive millions of dollars in federal funds to operate the FSA throughout the BOP. These funds are received for each individual EBBR and PA listed in the BOP FSA Program Manual and for awards and incentives associated with those programs. However, although funds are received for each individual EBRR and PA listed, FTCs and/or ETCs are not awarded for each individual EBBR and PA completed within the 30 period. NORMAN receives only "15" FTC/ETCs within a siggle 30 day period although she has completed 5 EBRR and PAs within that same 30 day period. NORMAN should be awarded 75 FTC/ETCs within that same single "30" day period. Failure to award NORMAN "all" FTC/ETCs earned while receiving federal funds for that expressed purpose is unlawful and a misrepresentation that is tantamount to fraud. Resulting in NORMAN'S assignment to secure custody at FMC Carswell camp instead of an assignment to home confinement, resultii in NORMAN'S second Covid-19 infection and irreparable harm to her health.

24. The BOP received millions of dollars in federal funds to administer the CARES Act. The CARES Act was enacted to protect the medically vulnerable that were incarcerated during the Covid-19 Pandemic. NORMAN contracted Covid-19 while incarcerated at FMC Carswell. As a result of this Covid-19 infection NORMAN is now diagnosed with Severe COPD, Asthma, Long Covid Disease, and GERD. NORMAN is a Care Level 2, nonviolent, MINIMUM PATTERN SCORE, MINIMUM Custody - OUT inmate that clearly qualified for the CARES ACT. NORMAN requested CARES ACT "exception" review on March 8, 2023 at her scheduled Program Review.

25. No attempt was made to process NORMAN"S CARES Act application until

May 9, 2023. NORMAN'S family was contacted to confirm her release plan. NORMAN was told to sign the following documents 1.)Halfway House Rules, 2.)Homeconfinement Rules, 3.)Progress Report, 4.)Address Verification. NORMAN"S request for a copy of these documents was denied via her Case Manager. NORMAN"S CARES Act application was denied on May 10, 2023 due to CARES Act authorization for the BOP ending on Mya 10, 2023, as stated by Case Manager Smith-Branton.

26. FMC Carswell has processed and approved the CARES Act applications for inmates with NO CDC Covid-19 risk factors, for inmates with a history of violence, for inmates that were gang affiliated, specifically affiliated with Aryan Brotherhood, Tango-Blast, and Cartels, all in violation of Congressional intent and statutory law, simply because those inmates are white and/or of caucasian descent.

27. FMC Carsell has processed and approved the CARES Act applications for inmates with NO CDC Covid-19 risk factors for inmates with a history of violence, for inmates that were gang affiliated, specifically affiliated with Aryan Brotherhood, Tango-Blast, and Cartels, all in violation of Congressional intent and statutory law, simply because those inmate had served 50% or more of their imposed term of imprisonment.

28. FMC Carswell has falsified FSA documentation. The defendants negligently, willfully, wantonly and with deliberate indifference "miskeyed" information and data in the PATTERN System, the system that calculates FSA credits, regarding NORMAN's FSA EBRR classes/programs. NORMAN'S EBRR classes/program are listed on her FSA Recidivism Assessment (PATTERN 01.03.00) Form. The start date and stop date for program participation is documented as the same date. For example, NORMAN completed LCP(Life Connections Program), a residential program that takes a minimum of 18 months to complete. Due to

the Covid-19 Pandemic, it took NORMAN 22 months to complete LCP. However, only the program start date is keyed in as 6/16/2021 16:52, no stop date is keyed in, on NORMAN'S Department of Labor Apprenceship, a program that required a year to complete, the start date and the stop date were both keyed in as 01/08/2020 00:01. The deliberate failure to key the start and stop dates in as stated and documented in the BOP SENTRY System, is wanton, willfull, negligent and reckless conduct that purposefully disables the PATTERN System's ability to automatically calculate NORMAN'S FTC credits for the EBRR programs completed. NORMAN has completed 19. EBRR Programs and she is on the waitlist for 7 EBRR Programs. NORMAN has earned a total of 5,880 FTCs for her successful completion, participation, and enrollment of of EBRR Programs. ALL of the EBRR Programs completed by NORMAN are either not listed on her FSA Recidivism Assessment (PATTERN 01.03.00) or the start and stop date has been keyed as the exact same date at theexact same time. Resulting in the denial of FTC credits for EBRR Programs completed by NORMAN . These same EBRR Programs are individually listed in the BOP FSA Program Guide and BOP receives federal funds for each EBBR Program individually.

29.  The BOP began automation in August 2022. The FSA calculator is written to reflect the FSA regulations and policy which describe the various circum- stances when Adults in Custody (hereinafter "AIC") can earn and when they are not in earning status. Accordingly, the automation expects to see specific data but occasionally, data is missing or anamolus. When errors occur, (miskeyed or missing info that the calculator relies on), the Unit Team (Case and Unit Managers) should work to find and correct the data issue so that the time credits can be appropriately computed.

30.  NORMAN in an attempt to ensure that the data on her FSA Recidivism Assess- ment form is "keyed" in correctly and consistent with the length of the

EBRR Program as stated in the BOP FSA Program Manaual and the actual length of 30 day periods that NORMAN completed during her participation in the EBRR Program, spoke with her Unit Team and filed the subsequent administrative remedy after her Case Manager's refusal to address her concerns. However, it is the defacto policy of FMC Carswell to thwart the Administrative Remedy process by simply refusing to answer the remedy at the local level, a BP-9. Although BOP Policy states that no answer can be considered a denial Without the denial being attached to the next level of the remedy process, a BP-10, the BP-10 will be "rejected" due to the absence of the answer to the BP-9, and the final level of the administrative remedy process, a BP-11, will also be "rejected" for failure to attach the responses to the BP-9 and the BP-10. The end result is a STRATEGIC AND COORDINATED DENIAL OF THE BOP ADMINISTRATIVE REMEDY PROCESS. NORMAN submitted her request for an administartive remedy regarding the falsification of the documentation on her FSA Recidivism Assessment form, FOR THE SECOND TIME, nearly SIX months ago. FMC Carswell has not provided an answer to her BP-9 and has made NO attempt to correct the form. Choosing instead to verbally state the following, " the FSA Recidivism form is just for listing classes in order to lower the patter PATTERN score, you're already the lowest that you can be, you can't get any lower, the start and stop dates for the classes does not matter, it is not for tracking the length and/or hours earned from taking the classes, just that the class has been taken. The form is not a legal document, the legal document comes from SENTRY".(as stated by CMC MALLARD on April 1,2024).

31. The BOP launched the "Conditional First Step Act Calculator in late October of 2023. This latest enhancement provides BOP employees and the AIC with needed information regarding the potential positive impact of earning FTCs toward advancing an individual's release date. This forward looking assessment tool is now printing a FSA Conditional Release Date and a FSA

Conditional Placement Date in the new planning section of NORMAN'S FSA Time Credit Assessment (PATTERN System) Form. NORMAN was told via a Town Hal conducted by the Camp Administrator Ms. Mark. At the Town Hall NORMAN was told to "ignore" the information in the planning section of the Time Credit Assessment Form and she was told that "going forward the information would be "redacted". Ms. Mark also stated that although the documentation was sent via the BOP Central Office, the information was "erroneous" and would not be at FMC Carswell". NORMAN requested confirmation of what was said in the Town Hall in some kind of formal written statement, her request was ignored. The correct calculation of FTCs earned by NORMAN in combination with the FSA Conditional Placement Date would result in NORMAN'S transfer from FMC Carswell Camp, a hazardous environment, to Prerelease Confinement. Giving NORMAN the needed opportunity to reduce her exposure to various infectious diseases, specifically Covid-19.

32. FMC Carswell operates in a constant state of noncompliance with State of Texa Texas Laws and Regulations regarding the Boiler System, level of contaminatic in the water, presence of Asbestos throughout the facility, the continued use of lead pipes for water distribution throughout the facility, the failure to provide adequate ventilation systems throughout the facility and specifi- cally the living quaters, the failure to provide hot water for the purpose of laundering clothes, and inability to provide a safe and nonhazarous living environment for NORMAN.

33. FMC Carswell in under construction and has remained under constrction for over a year. Resulting in NORMAN residing at a "construction work site" that has exposed her to hazardous material that has exacerbated her Respiratory conditions(COPD,Asthma). The crumbling infrastructure of FMC Carswell and need for repairs prompted the officials at FMC Carswell to transfer healthy caucasians instead of black individuals over the age of 50 with medical

conditions requiring a BOP Care Level of 2, specifically Severe COPD, Long Covid Disease, and Asthma.

34. With deliberate indifference to NORMAN'S health conditions,and with reckless, wanton and willfull intent to retaliate against NORMAN for filing remedies referencing the above stated complaints, the camp Unit Team filed documents requesting that NORMAN be transferred to FPC Bryan in August of 2023. NORMAN resided in the Dallas/Fort Worth area for more than 30 years.The Northern District of Texas sentencing Court recommended that NORMAN serve her sentence at FMC Carswell to help her maintain contact with her family due to the length of her sentence. Additionally, NORMAN, as an FSA eligible inmate has earned the privilege to be housed at a facility that is close to her home residence. However, the camp Unit Team, in violation of FSA, chose to transfe NORMAN for "over crowding" purposes, due to the camp's construction and repair instead of transferring white and/or caucasian descent inmates with multiple disciplinary infractions and/or gang affiliation. Specifically those that are on an Aryan Brotherhood Federal Indictment, which is the definition of "gang affiliation" and per BOP Policy should NOT be housed at a BOP camp.

35. The Unit Team (camp) has unsupervised and unlimited discretion that is routinely exercised in an arbitrary and capricious manner. The Unit Team has provided NORMAN with false information and information that is contrary information provided by the BOP Central Office via Program Statements, Federal Registry documentation, and information printed on BOP computation and FSA Time Credit Assessment forms and/or documentation. NORMAN has been told repeatedly that current BOP Program  statements, "are old and no longer used", although these Program Statements have NOT been rescinded. Unit Team members are allowed to remain in the same positions in the same unit for

YEARS, regardless of the number of complaints lodged against the team member by inmates. No member of the Executive staff at FMC Carswell or the CMC took steps to ensure that medically vulnerable inmates, like NORMAN, were properly reviewed and processed for the CARES Act. This task was left solely to the discretion of the Unit Team, who chose to abuse the power and/or authority given to them by using their discretion to engage in conduct that was unlawfu racially discriminating, capricious and arbitrary.

36. The defendants willfully, wantonly and with deliberate indifference, deceived NORMAN regarding their authority to continue processing CARES Act application NORMAN was repeatedly told that "CARES Act is over, if your paperwork did not make it to the RRM by May 10, 2023 it is too late". Meanwhile, the defendants continued to receive and use Federal Funds to administer the CARES Act, including free phone calls and video visits for the inmate population, while simultaneously refusing to review, process and approve inmate's that are medically vunerable, such as NORMAN. This conduct constitutes the statutory crime of misrepresentation.

37. The defendants willfully, wantonly and with deliberate indifference denied NORMAN the benefit of the calculation and application of "all" FTCs/ETCs earned since Janaury 1, 2019. NORMAN has repeatedly requested the calculation and application of all FSA Time Credtis earned, and all requests have been denied. In the interim NORMAN contracted Covid-19 for a second time, which resulted in irreparable harm to NORMAN'S health. NORMAN has earned FSA Time Credits(FTC/ETCs) that exceeds the number of days that she has remaining on imposed term of imprisonment. Thus creating a liberty issue that results in NORMAN'S excessive confinement and/or false imprisonment as defined in 28 U.S.C. §2680.

38. The defendants willfully, wantonly, recklessly and with deliberate indifferen[ce] have purposefully "miskeyed" data into the system that autocalculates NORMAN"S earned FTC/ETCs. The defendants have purposefully "miskeyed" data and/or refused to key in missing or anamolus data, and/or purposefully refused to key in the correct application code. All of which is specific data required by the automation system to ensure that time credits can be appropriately computed. The BOP and the Unit Team are aware of the adverse impact on NORMAN'S ability to receive the FTCs/ETCs that she has earned due to the willfull, wanton, reckless and deliberate actions stated above. But the defendants continue to deceive NORMAN and provide false information to NORMAN regarding the calculation and application of the FTC/ETCs "earned". Resulting in NORMAN remaining in secure custody, at FMC Carswell, when she should have been transferred to RRC, which would have provided NORMAN the opportunity to practice optimal infection prevention control measures, and would have decreased and/or resolved NORMAN'S risk of contracting Covid-19 for a second time.

39. The defendants willfully, wantonly, recklessly and with deliberate indifference have purposefully denied NORMAN the medical care and medications needed to help decrease her risk of irreparable harm from contracting Covid-19 and/or the medications needed to help mitigate symptoms as a result of contracting Covid-19, the proper medical diagnosis regarding the irreparable harm done to NORMAN'S health. The defendants, having knowledge of NORMAN'S medical conditions, the crumbling infrastructure of FMC Carswell and the inability to provide a safe environment for NORMAN, denied NORMAN the opportunity to keep herself safe from contracting Covid-19 for a second time, by transferring her to RRC via prerelease custody/placement as required by the FSA.

40. The defendants enjoy a great deal of authority and discretion in regards to how, why, if and when to exercise that authority and/or discretion. However, as law enforcement officers, they are obligated to adhere to BOP Policy, Federal Law, BOP Standards of Employee Conduct, and the Master Agreement between the FBOP and the Council of Prison Locals(American Federation of Government Employees, and to provide accurate and honest information in relation to NORMAN'S right to liberty. But the defendants have willfully, wantonly, recklessly, negligently, and with deliberate indifference, abused the discretion and authority given to them by administering the CARES Act and the First Step Act in an arbitrary and capricious manner by actively practicing racial discrimination, misrepresentation and deceit to deny NORMAN FSA Time Credits that have been earned and CARES Act  Home Confinement for the medically vulnerable, both of which has caused NORMAN'S excessive and/or false imprisonment as defined in 28 U.S.C. §2680 and continuous irreparable harm to her health. The damages are as follows;

    a. Plaintiff NORMAN has suffered physical injuries and required medical treatment

    b. Plaintiff NORMAN has suffered physical pain and suffering

    c. Plaintiff NORMAN has suffered mental anguish

    d. Plaintiff NORMAN has suffered a permanent injury

    e. Plaintiff NORMAN will incur future medical expenses in and about an effort to treat her injuries

    f. Plaintiff NORMAN has suffered an impairment in her earnings potential and/or loss of future income or future earning capacity.

COUNT ONE

NEGLIGENT/WANTON CONDUCT AGAINST DEFENDANTS

41. Plaintiff adopt and incorporate by reference all allegations of the preceding paragraphs herein.

42. At the aforesaid time and place and for some time prior thereto, Defendants' care for NORMAN, while testing positive for Covid-19, while in so called "medical isolation", and after NORMAN'S second Covid-19 infection fell below the applicable standard of care and the Defendants negligently and/or wantonl; caused the injuries herein with the Plaintiff.

43. Said conduct was the proximate cause of NORMAN'S injuries and damages. WHERE WHEREFORE, NORMAN demands judgment against defendants, jointly and severally, in a sum of compensatory and/or punitive damages in excess of the jurisdictional limits of this Court, to be determined by a jury, which will fairly and adequately compensate NORMAN for the damages and injuries she sustained, together with interest from the date of the incident and the costs of the proceeding.

COUNT TWO

MEDICAL NEGLIGENCE AND/OR WANTONNESS

(AGAINST ALL DEFENDANTS)

44. Plaintiff hereby adopts all of the previous factual averments contained in the preceeding paragraphs and incorporates them by reference herein;

43. Defendants provided medical care wherein NORMAN was a prisoner;

44. Defendants' employees, staff, medical professionals or contractors knew and/or in exercise of reasonable care had reason to know that NORMAN, a Care Level 2 Chronic Care inmate with multiple medical vulnerabilities, needed to be treated and cared for in a manner consistent with CDC Guidance regarding proper care for individuals at risk of severe illness and/or death when contracting Covid-19, the community standards of care, and BOP Policy;

45. Defendants employees, staff, medical professionals, and/or contractors, howeve did not provide NORMAN with medical care that is consistent with community standards of care, BOP Policy, and CDC Guidance for proper care of individuals at risk of severe illness and/or death when contracting Covid-19.

46. Defendants had a legal duty to possess and exercise the same degree of care, skill and diligence commonly possessed and exercised by the same or similarly situated medical centers practicing medicine within the national medical community under the same facts and circumstances as set out above as well as to those requirements established by state and federal law. Defendants owed the following, but not limited to the following duties of care to NORMAN;

a.) To timely and proper care and treatment for NORMAN;

b.) To provide employees, staff, medical professionals and/or contractors, training in the proper manner of care and treatment for individuals with severe risk of illness and/or death when contracting Covid-19.

c.) To provide employees, staff, medical professionals and/or contractors, training in prescribing and dispensing medication based on diagnostic test results, symptoms and medical diagnosis, consistent with community standards, BOP Policy and FDA medication approval;

d.) To properly monitor the actions of employees, staff, medical professionals and/or contracts;

e.) To employ personnel, staff, medical professionals, and/or contractors, who understand and do provide medical care to inmates that is consistent with community standards, BOP Policy and CDC Guidance regarding care for individuals at risk for severe illness and/or death when contracting Covid-19;

f.) To provide an adequate number of medical staff, personnel, and/or contractors needed according to the inmate to medical staff ratio, to ensure that NORMAN receives the proper medical treatment and care that is consistent with community standards, BOP Policy and CDC Guidance regarding care for inmates at risk of severe illness and/or death when contracting Covid-19;

g.) To properly and routinely assess and/or evaluate the medical needs of NORMAN and to provide the appropriate medical care, treatment and medication to meet those needs consistent with community standards, BOP Policy, and CDC Guidance for individuals at risk of severe illness and/or death when contracting Covid-19;

h.) To properly assess NORMAN'S medical needs;

i.) To adhere to instructions and/or treatment plans prescribed by Specialists

j.) To report and investigate physical symptoms and/or medical issues

Pg.24

k.) To timely schedule a time for NORMAN to see a doctor when requested;

l.) To provide the medication needed to reduce the risk of severe illness and/o death, i.e any version of what is known as the Covid Pill (Paxlovid, Veklur or Lagevrio);

m.) To provide mediaal staff during the entire lenght of medical isolatiom that are trained regarding CDC Guidance, BOP Policy, and the community standards of care;

n.) To properly address NORMAN'S symptoms and complaints, and prescribe medica-tion as required and requested;

Defendant's negligently and/or wantonly, and/or with deliberate indifferenc breached the standard of care for similary situated healthcare providers by the following, but not limited to the following actions and/or inactions and/or omissions;

a.) Failing to properly and timely treat and care for NORMAN

b.) Failing to provide employees, staff, medical professions, and/or contractor trained to provide medical care consistent with community standards, BOP Policy, and CDC Guidance of medical care of individuals at risk for severe illness and/or death when contracting Covid-19;

c.) Failing to properly monitor the actions of employees, staff, medical professionals, and/or contractors while providing care to NORMAN in medical isolation;

d.) Failing to employ personnel, staff, medical professionals, and/or contractor who are knowledgable of BOP Policy, community standards of care, and CDC Guidance for individuals at risk for severe illness and/or death when contracting Covid-19;

e.) Failing to provide medical staff during the entire length of medical isolation that are trained regarding CDC Guidance, BOP Policy, and the community standards of care;

f.) Failing to provide an adequate number of medical staff, personnel, and/or contractors needed according to the inmate to medical staff ratio, to ensure that NORMAN receives the proper medical treatment and care that is consistent with community standards, BOP Policy, and CDC Guidance for individuals at risk for severe illness and/or death when contracting Covid-19;

g.) Failing to properly assess NORMAN'S medical needs;

h.) Failing to report and investigate physical symptoms and/or medical issues

i.) Failing to timely provide NORMAN with access to a Doctor as requested

j.) Failing to administer medications needed to treat reported symptoms;

k.) Failing to provide doctors, nurses, medical professionals and/or contractor that are properly trained and knowledgable of BOP Policy, CDC Guidance for individuals at risk of severe illness and/or death from contracting Covid-19, and community standards of care.

l.) Failing to adhere to and/or implement policies and procedures specific to Covid-19 and to ensure that medical staff, contractors and medical personne are properly trained in community standards of care regarding the adminstration and dispensing of medications and providing basic medical care to individuals that have contracted Covid-19.

m.) Failing to adhere to and/or implement policies and procedures specific to providing care for individuals at risk of severe illness and/or death from contracting Covid-19;

n.) Failing to keep NORMAN safe from contracting Covid-19 by adhering to CDC Guidance for Correctional Facilities and individuals at risk of severe illness and/or death from contracting Covid-19, the CARES Act, and the FSA;

47. As a direct result of the above described negligent and/or wanton actions and/or inactions of the Defendants, both named and unnamed, Plainiff NORMAN was caused injury resulting in irreparable harm to her health.

48. WHEREFORE, Plaintiff, NORMAN, demands judgment against defendants, jointly

and severally, in a sum of compensatory and/or punitive damages in excess of compensatory and/or punitive damages in excess of the jurisdictional limits of this Court, to be determined by a jury, which will fairly and adequately compensate NORMAN for the damages and injuries she sustained, together with interest from the date of the incident and the costs of the proceeding.

COUNT THREE

Violation of Constitutional Rights

Pursuant To 42 U.S.C. §1983

(Against All Defendants)

49. Plaintiff incorporates herein by reference the allegations contained in the proceeding paragraphs.

50. Upon information and belief, Defendants, acting under color of state and federal law, violated NORMAN'S Eighth Amendment right to not be subjected to cruel and unusual punishment.

51. Defendants acted with deliberate indifference toward the serious medical needs of NORMAN while a prisoner at FMC Carswell. This includes ignoring the BOP's policy and stated written agreements to provide NORMAN with a safe living environment that is maintained in compliance with routine health and safety codes established by the State of Texas, OSHA, and Federal Law.

52. Defendants knew, or should have known, that Congress enacted Section 12003(b)(2) in the context of heightened pandemic related risks that the federal prison system was experiencing, because of the close quarters and dense populations of inmates and guards created an environment conducive to the spread of the virus, and that pandemic risks in prison facilities might linger well beyond the official end of the pandemic emergency.

53. Defendants knew, or should have known, that Congress intended to permit home confinement placements granted under section 12003(b)(2) of the CARES Act to outlast the emergency period. Giving the BOP discretion to determine the length of home confinement placements with an explicit delegation of authority; "as the Director determines appropriate". Further stating that, under section 3621(a), BOP has additional authority to continue extended home confinement placements and their associated "ongoing administrative duties" beyond the emergency period.

54. Defendants knew, or should have known, that a construction project was pending for FMC Carswell Camp, which will involve the removal of carpet contaminated with asbestos, drywall contaminated with black mold, sand blasting , which releases hazardous material into the air, and the removal of galvinized pipes contaminated with lead. All are hazardous to NORMAN'S health and exacerbates her respiratory conditions.

55. Defendants knew, or should have known, that the construction project would result in the closing of the Westside of the FMC Carswell Camp, and the housing of NORMAN in a manner that exceeds the building's design capacity, BOP's Rated Capacity Policy, and in a manner that is contrary to CDC Guidance for Correctional Facilities(Covid-19), and in violation of the Fire and Life Safety Codes.

56. Defendants knew, or should have known, that housing NORMAN in a manner that exceeds BOP Rated Capacity and the building's design capacity increased NORMAN'S risk of contracting an infectious disease, specifically Covid-19, and was contrary to CDC Guidance for individuals at risk of severe illness and/or death from contracting Covid-19.

57. Defendants knew, or should have known, that the FMC Carswell Camp facilities lacks the ventilation system required, per CDC Guidance and BOP Policy, to provide the air quality needed to protect NORMAN from rapid spread of an airbourne infectious disease, specifically Covid-19, and ensure the health and safety of NORMAN, a medically vulnerable inmate at risk of severe illness and/or death from contracting Covid-19.

58. Defendants knew, or should have known, that the facility at FMC Carswell Camp lacks a boiler system that is maintained in compliance with BOP Policy, OSHA Standards and/or the State of Texas Boiler Law. The failure to operate a boiler system in compliance with the above stated agency policies, federal standards, and Texas Law, exposed NORMAN to communicable diseases, specifically Covid-19, via a contaminated water system.

59. Defendants knew, or should have known, that the facility at FMC Carswell, does not maintain the plumbing system in compliance with Federal Law, BOP Policy, or State of Texas Law. FMC Carswell is a female facility. Females, according to BOP Policy, are a "special population", due to the special accomodations and services required to house female inmates. Sanitary napkin are "special" items required in female facilities due to females having a menstrual cycle. Multiple females equate to multiple menstrual cycles, and daily exposure to blood. The failure to provide hot water, at the required temperature, for the purposes of laundering clothes, exposed NORMAN to blood, blood pathogens and various communicable diseases, specifically Covid-19, twice a week, when she washed her clothes. Resulting in NORMAN contracting Covid-19 for a second time.

60. Defendants knew, or should have known, that NORMAN was otherwise healthy until she contracted Covid-19 on both July 28,2020 and October 28,2022. Which has resulted in an increase in her BOP Care Level from Care level One to Care Level Two and a diagnosis of the following; 1.) Severe Chronic Obstructive Pulmonary Disease(COPD),2..) Asthma, 3.) SOB with Exertion since Covid-19, 4.) Long Covid Disease, 5.) Small Vessel Disease, 6.) GERD, and 7.) Morbid Obesity(BMI 41.9). All of which qualified NORMAN for CARES Act Home Confinement.

61. Defendants knew, or should have known, that Covid-19, unlike the FLU, can cause permanent damage to NORMAN"S health each time that she contracts the disease, and due to the dormitory style living quarters, congregated living environment, and the nonfeasibility of social distancing in a correctional facility, NORMAN was not able to protect herself and keep herself safe from Comtracting Covid-19. Which multiple medical studies have shown, result in the permanent damage of various organs in the body, including the respiratory system, lungs, heart, GI Track, nervous sytem, including the brain, and the Pulmonary System.

62. Defendants knew, or should have known, that the BOP settled a Class Action Lawsuit with inmates at Lompoc Prison. SEE Order re:Joint Motion for Final Approval of Class Action Settlement: Garries v. Louis Milusnic, No. 2:20-CV-04450-CBM(Docket No. 863 Oct. 11, 2022, Lompoc Settlement, and that NORMAN, the same and/or similarly situated inmate should have received the same benefit and protection granted in the above stated Class Action Lawsuit.

COUNT FOUR

Negligent/Wanton Conduct

(Against All Defendants)

63. Planitiff adopts and incorporate by reference all allegations of the preceding paragraphs herein.

64. At the aforesaid time and place and for some time prior thereto, Defendants' care for NORMAN fell below the applicable standard of care and they negligently and/or wantonly caused the injuries herein with NORMAN.

65. Said conduct was the proximate cause of NORMAN'S injuries and damages. WHEREFORE, NORMAN demands judgment against defendants, jointly and severally in a sum of compensatory and/or punitive damages in excess of the jurisdictional limits of this Court, to be determined by a jury, which will fairly and adequately compensate NORMAN for the damages and injuries she sustained, together with interest from the date of the incident and the costs of the proceeding.

COUNT FIVE

Prima Facie and/or Per se Negligent Conduct

(Against All Defendants)

66. Plaintiff adopts and incorporate by reference all allegations of the preceding paragraphs herein.

67. At the aforesaid time and place and for some time prior thereto, Defendants' care for NORMAN fell below the applicable standard of care and they negligently and/or wantonly caused the injuries herein with NORMAN.

68. As a result of this conduct, Defendants violated Texas Health and Safety Code, Chapter 81.101, Chapter 321 Mental Health Care Facilities, Patient Bill of Rights, Chapter 755-Texas Boiler Law, Texas Administrative Code, Chapter 65-Texas Boiler Rules, Texas Civil Practice and Remedies Code, Chapter 74-Medical Liability Act, Texas Communicable Disease Law.

69. Said conduct was the proximate cause of NORMAN'S injuries and damages, and is prima facie and/or per se negligence.

70. WHEREFORE, NORMAN demands judgment against defendants, jointly and severally in a sum of compensatory and/or punitive damages in excess of the jurisdictional limits of this Court, to be determined by a jury, which will fairly and adequately compensate NORMAN for the damages and injuries she sustained, together with interest from the date of the incident and the costs of the proceeding.

COUNT SIX

Negligent and/or wanton Supervision or Training

(Against All Defendants)

71. Plaintiff hereby adopts all of the previous factual averments contained in paragraphs numbered (1-70) and incorporates them by reference herein.

72. Defendants negligently and/or wantonly failed to supervise and/or train their employees, staff, medical professional and/or contractors, specifically, SMITH_BRANTON, MALLARD, REX, FLEINER, ORR AND UNT.

73. Defendants negligent and/or wanton failure included, but was not limited to the failure to train their employees, staff, medical professionals and/or contractors, in particular, SMITH_BRANTON, MALLARD, REX, FLEINER, ORR AND UNT

74. Defendants served as the employer, supervisor and/or master of their employee staff, medical professionals and/or contractors, in particular, SMITH_BRANTON MALLARD, REX, FLEINER, ORR and UNT, who negligently, willfully, wantonly and /or with deliberate indifference failed to follow BOP Policy, Community Standards of Care, CARES Act, First Step Act, Federal Law and State of Texas Law.

75. Such conduct was the proximate cause of NORMAN'S injuries.

76. WHEREFORE, NORMAN demands judgment against defendants, jointly and severally, in a sum of compensatory and/or punitive damages in excess of the jurisdictional limits of this Court, to be determined by a jury, which will fairly and adequately compensate NORMAN for the damages and injuries she sustained, together with interest from the date of the incident and the costs of the proceeding.

COUNT SEVEN

Negligent and/or Wanton Hiring

(Against all Defendants)

77. Plaintiff hereby adopts all of the previous factual averments contained in paragraphs numbered 1-76 and incorporates them by reference herein.

78. Defendants negligently and/or wantonly hired and/or contracted with their employees, staff, medical professionals and/or contractors, in particular, SMITH-BRANTON, MALLARD, REX, FLEINER, ORR, and UNT, by failing to ensure that they were qualified and/or otherwise fit to occupy the position (i.e carry out the responsibilities, knowledgeable about BOP Policy, community standards of care and Federal and State Law), for which they were charged or rehiring them and/or continuing employment after receiving multiple complaints or racial discrimination, deceit, abuse of process, abuse of discretion and misrepresentation.

79. Defendants negligently and/or wantonly disregard the consequences of such failure to hire and/or contract with a qualified employees, staff, medical professional, and/or contractor, in particular, SMITH-BRANTON, MALLARD, REX, FLEINER, ORR and UNT.

80. Such conduct was the proximate cause of NORMAN'S injuries. WHEREFORE, NORMAN demands judgment against defendants, jointly and severally, in a sum of compensatory and/or punitive damages in excess of the jurisdictional limits of this Court, to be determined by a jury, which will fairly and adequately compensate NORMAN for the damages and injuries she sustained, together with interest from the date of the incident and the costs of the proceeding.

COUNT EIGHT

Negligent and/or Wanton Retention

(Against All Defendants)

81. Plaintiff hereby adopts all of the previous factual averments contained in paragraphs 1-80 and incorporates them by reference herein.

82. Defendants negligently and/or wantonly retained their employees, staff, medical professionals and/or contractors, such as SMITH-BRANTON, MALLARD, REX, FLEINER, ORR and UNT.

83. Defendant's employees, staff, medical professionals and/or contractors, in particular, SMITH-BRANTON, MALLARD, REX, FLEINER, ORR, and UNT was an unfit employee and/or contractor, but Defendants continued to employ and/or request the services of said employee, staff, medical professional and/or contractor.

84. Such conduct was the proximate cause of NORMAN'S injuries. WHEREFORE, NORMAN demands judgment against defendants, jointly and severally, in a sum of compensatory and/or punitive damages in excess of jurisdictional limits of this Court, to be determined by a jury, which will fairly and adequately compensate NORMAN for the damages and injuries she sustained, together with interest from the date of the incident and the costs of the proceeding.

COUNT NINE

VICARIOUS LIABILITY

(AGAINST ALL DEFENDANTS)

85. Plaintiff hereby adopts all of the previous factual averments contained in paragraphs numbered 1-84 and incorporates them by reference herein.

86. Defendants served as the employer and/or master and/or supervisor of their employee, staff, medical professionals and/or contractors.

87. Defendant's employees, staff, medical professionals and/or contractors were in the line and scope of employment in January 2019-December 2022, at the the time of the incidents described herein.

88. Furthermore, negligent and/or wanton acts of Defendant's employees, staff, medical professionals and/or contractors committed in January 2019-December 2022 have been ratified by Defendants.

89. Defendants are vicariously liable for the acts of their employees, staff, medical professionals and/or contractors.

90. Such conduct was the proximate cause of NORMAN'S injuries. WHEREFORE, NORMAN demands judgment against defendants, jointly and severally, in a sum of compensatory and/or punitive damages in excess of the jurisdictional limits of this Court, to be determined by a jury, which will fairly and adequately compensate NORMAN for the damages and injuries she sustained together with interest from the date of the incident and the costs of the proceeding.

PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY

Respectfully Submitted,

Alexis Carlette Norman
BOP Reg. NO. 49210-177

SUBMITTED ON OCTOBER 3, 2024

Pg. 36

PLEASE SERVE THE FOLLOWING DEFENDANTS VIA U.S. MARSHALL AND/OR U.S. MAIL

WITH SUMMONS AND COMPLAINT:

FEDERAL MEDICAL CENTER CARSWELL A/K/A FMC CARSWELL
J Street Bldg 3000
Fort Worth, TX 76127

FEDERAL BUREAU OF PRISONS
320 First Street, NW
Washington, D.C. 20534

ERICA SMITH-BRANTON
J Street Bldg 3000
Fort Worth, TX 76127

STACY MALLARD
J Street Bldg 3000
Fort Worth, TX 76127

MICHAEL SMITH - FMC CARSWELL WARDEN
J Street Bldg 3000
Fort Worth, TX 76127

STACY FLEINER
BOP SOUTH REGIONAL OFFICE
344 Marine Forces Drive
Grand Prairie, TX 75051

Acting Unit Manager REX
BOP SOUTH REGIONAL OFFICE
344 Marine Forces Drive
Grand Prairie, TX 75051

UNT HEALTH PATIENT SERVICES/GROUP
8500 Montgomery Street
Fort Worth, TX 76107

JOHN DAVID ORR, D.O., DABPN
UNT HEALTH PATIENT SERVICES/GROUP
8500 Montgomery Street
Fort Worth, TX 76107

JS 44  (Rev. 04/21) (TXND 4/21)

# CIVIL COVER SHEET

**RECEIVED**
OCT 2024
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

### I. (a) PLAINTIFFS
ALEXIS CARLETTE NORMAN

**(b)** County of Residence of First Listed Plaintiff  Tarrant
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
BOP Reg. No. 49210-177
P.O. Box 27137
Fort Worth, TX 76127

### DEFENDANTS
FEDERAL BUREAU OF PRISONS
FMC CARSWELL

County of Residence of First Listed Defendant  Tarrant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*   **4-24CV-997-P**
UNITED STATES ATTORNEY-
NORTHERN DISTRICT OF TEXAS/Fort Worth

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☐ 3  Federal Question *(U.S. Government Not a Party)* |
| ☒ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☒ 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☒ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

### V. ORIGIN *(Place an "X" in One Box Only)*
☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District *(specify)*  ☐ 6 Multidistrict Litigation - Transfer  ☐ 8 Multidistrict Litigation - Direct File

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
SEE ATTACHED COMPLAINT
Brief description of cause:
SEE ATTACHED COMPLAINT

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
**DEMAND $** $49,210,177.00
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes  ☐ No

### VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE  OCTOBER 3, 2024
SIGNATURE OF ATTORNEY OF RECORD  *Alexis C.*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____



U.S. Dep...
Federal Bureau of Pris...
Federal Medical Center, Carswell
P.O. Box 27066
...tr Street Building 3000
Fort Worth, Texas 76127

Official Business:
Penalty for Private Use $XXX
Alexis Carlette Norman
49210-177
CAMP EAGLE

RECEIVED
OCT 16 2024
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

49210-177
United States District
501 W 10TH ST
room 310
FORT Worth, TX 76102
United States

U.S. Department of Ju
Federal Bureau of Priso
Federal Medical Center, Carswell

P.O. Box 27066
"J" Street-Building-1000
Fort Worth, Texas 76127

Official Business
Penalty for Private Use $300

Alexis Carlette Norman
49210-177
CAMP East



RECEIVED

OCT 16 2024

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

⇔49210-177⇔
United States District
501 W 10TH ST
room 310
FORT Worth, TX 76102
United States