IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

ALEXIS CARLETTE NORMAN,
an individual,

        PLAINTIFF,

v.

UNITED STATES OF AMERICA

        DEFENDANT,

Civil Action No. 4:24-cv-0997-P

JURY TRIAL REQUESTED

## SECOND AMENDED COMPLAINT

SECOND AMENDED COMPLAINT

COMES NOW the Plaintiff, ALEXIS CARLETTE NORMAN, with her claims against the Defendant, UNITED STATES OF AMERICA (hereinafter "USA"). The Plaintiff, ALEXIS CARLETTE NORMAN (hereinafter "NORMAN") brings this complaint against the USA under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), 2671-80, ("FTCA"), and the Eighth Amendment of the U.S. Constitution.

## IDENTIFICATION OF CARSWELL'S GOVERNING/MANAGING STAFF

1. Warden- Michael Smith (hereinafter "WARDEN")

2. Medical Director - Ms. Mercado (hereinafter "MERCADO")

3. Facilities Director - Ms. Jefferson (hereinafter "JEFFERSON")

4. Case Manager Coordinator - Stacy Mallard (hereinafter "MALLARD")

## IDENTIFICATION OF MEDICAL PROFESSIONALS

1. Nurse Tucker, LVN

2. Nurse Practioner Gamez, N.P.

3. Medical Director Mercado

## IDENTIFICATION OF BOP EMPLOYEES/STAFF

1. Unit Manager- Staci Fleiner  (Currently Employed at South Central Currently Employed at BOP South Central Regional Office (Grand Prairie,TX

2. Case Manager Coordinator - Stacy Mallard

3. Case Manager - Erica Smith-Branton

4. Unit Manager- Ms. Rex (Acting) Currently Employed at BOP South Central Regional Office (Grand Prairée,TX

## PARTIES/VENUE

1. The Plaintiff, NORMAN, submitted a complaint to this Court on October 1, 2024. The complaint was filed on October 16, 2024. On  November 5, 2024, this Court GRANTED NORMAN'S application to proceed in forma pauperis and that service of process be withheld pending the Court's preliminary screening of this case under  § 1915(e)(2). On November 7, 2024, this Court ORDERED NORMAN to file an amended complaint in which she identifies each defendant and states all material facts on which she contends she will establish her right to recover against that defendant by December 6, 2024. NORMAN submits that amended complaint now and states following.

2. In 1946, Congress passed the FTCA, which waived sovereign immunity of the United States for certain torts committed by federal employees a acting within the scope of their employment. A claim is actionable if it alleges these six elements of 28 U.S.C. § 1346(b); (1) against the United States, (2) for money damages, (3)for injury or loss of property or personal injury or death, (4) caused by the negligent or wrongful act or omission of any employee of the Government, (5) while acting within the scope of his/her office or employment, (6) under circum-stances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred, in this instant case, the place is the State of Texas.

3. BOP officials are law enforcement officers within the meaning of 28 U.S.C. § 2680(h), which is known as the "law enforcement proviso". FTCA retains jurisdiction with respect to the "acts or omissions or la\ enforcement officers that arise within the scope of their employment, regardless of whether the officers are engaged in investigative or law enforcement activity, or are executing a search, seizing evidence, or making an arrest." This retention includes claims arising out of false imprisonment, misrepresentation and deceit.

4. The UNITED STATES OF AMERICA (hereinafter "USA"), a federal republic formed after the late 18th Century War of Independence, operates and has as a United States government unit, a federal agency, the Federal Bureau of Prisons (hereinafter "BOP"). The BOP was established by the United States Congress in 1934 within the United States Department of Justice. The United States Congress "charged the agency with the management and regulation of all Federal penal and correctional institutions. Federal Medical Center Carswell is one of those correct-ional institutions and individuals mentioned within this complaint are

Pg.2

federal employees and law enforcement officers employed at Federal Medical Center Carswell (hereinafter "CARSWELL").

5. CARSWELL is located in Tarrant County, Texas, in the City of Fort Worth at the address of J Street Building 3000, zip code 76127.

6. Plaintiff, ALEXIS CARLETTE NORMAN, is over the age of nineteen (19) year old and resides at CARSWELL in Fort Worth, Texas. Plaintiff, ALEXIS CARLETTE NORMAN (hereinafter "NORMAN") suffered injury to her lungs, chest, pulmonary system, brain and spinal cord on October 28, 2022 - November 8, 2022, resulting in the follwing diagnosis; (1) Severe Chroni Obstructive Pulmonary Disease (hereinafter "COPD"), (2) Asthma,a and (3) Demyelinating Disease (also known as Small Vessel Disease or Multipl Sclerosis, (SEE Exhibit A). When NORMAN was placed into the custody of the Defendant, USA, she was without these injuries and otherwise healthy (SEE, Exhibit B). NORMAN'S prison sentence began on April 8, 2016.

7. On September 21, 2023 NORMAN submitted an administrative Tort complaint to the BOP South Central Regional Office in Grand Prairie, Texas via certified mail (receipt No. 7021 0950 0000 5457 7549). NORMAN'S claim provided "written notice of the incident" and a claim for money damages in a sum certain. The administrative Tort claim/complaint was signed by NORMAN and included nearly 30 attached pages detailing the claim. (SEE, Exhibit C). The BOP South Central Regional Office sent a letter to NORMAN acknowleging receipt of her administrative Tort Claim,and assigne a BOP Tort claim number to her claim.Therefore, NORMAN'S claim was sub-mitted within the time frame required and is "timely".

8. The Defendant, USA, via the BOP and the officials managing CARSWELL, negligently failed to enforce the following specific legal mandates required of the BOP and CARSWELL; (1) the BOP's Standards of Employee Conduct, (2)BOP Program statement for Infectious Disease Management,

Pg.3

No. 6190.03, (3) BOP Program Statement for Rated Capacity-No. 1060.11, (4) BOP Program Statement for Standards of Employee Conduct-No. 3420.11 (5) BOP Program Statement for Patient Care-No.6031.04, (6) BOP Program for Facilities Operations Manual- No. 4200.12, (7) BOP Program Statement for National Occupational Safety and Health Policy-No.1600.11, (8) BOP Program Statement for Health Services Administration-No.6010.04, (9) 29 CFR 1926-Projects involving asbestos, (10) BOP Program Statement for Infectious Disease Outbreak Record-No. 6190.04, (11) The Safe Drinking Water Act, (12) Texas Health and Safety Code, Chapter 81.101, (13) Texas Boiler Law Rules and Laws Chapter 65, (14) Texas Medical Liability Act-Chapter 74, (15) Texas Civil Practice and Remedies, and Texas Communicable Disease Law. Specifically, Warden Smith, Mercado

9. The Defendant, USA, via the BOP and the officials managing CARSWELL, negligently failed to enforce the following specific legal mandates required of the BOP and CARSWELL; (1)BOP Program Statement for Health Services Administration-No.6010.05, (2) BOP Program Statement for Discrimination-No. 1045.03, (3) CARES Act and (4) First Step Act, (5) BOP Program Statement for Office of Internal Affairs - No. 5 U.S.C. § 2302(b), (6) 31 U.S.C. § 1321(a)(21),(b)(1),(7)P.S. 4500.12

10. To be clear, NORMAN'S claims state that the BOP negligently fails to enforce BOP Policies, State of Texas Laws and Regulations, and a multitude of Federal Regulations and Statutory Laws. The culture of negligence has been nutured for over two decades at CARSWELL. Resulting in a facility that is operating contrary to the BOP Policies and various Texas and Federal Laws, Regulations and Statutory Laws stated above. Therefore, "the requirement of judgment or choice is not satisfied if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive."

The discretionary-function exception does NOT bar NORMAN'S claims, and she states the following in support.

11. The BOP via the governing/managing staff of CARSWELL negligently failed deliver NORMAN health care in accordance with proven standards of care as stated in BOP Program Statement No. 6031.04-PATIENT CARE(6/3/14), which states the following;, "Health care will be delivered to inmates i accordance with proven standards of care".

12. The BOP via the governing/managing staff of CARSWELL negligently failed routinely test the inmate population, at a minimum of 10%, to determine the presence of an infectious disease in the facility, as required by BOP Policy Program Statement No. 6190.04, which states, "Occupational Safety and Health Administration (OSHA) standards relevant to infectious disease management will be met" and "necessary containment measures will be used to transport, isolate, restrict contact of inmates with poten- tially comuunicable disease, until no longer contagious".

13. The BOP via the governing/managing staff of CARSWELL negligently failed to isolate and restrict contact of inmates with potentially communicable disease until no longer contagious, as required by BOP Policy No. 6190.0 which states, "only those institutions equipped with the proper engin- eering controls to house inmates in a negative pressure isolation room (NPIR) that comply with the current CDC recommendations, have the optior to isolate and treat inmates with susupected TB or other airborne diseas (requiring airborne precautions) that may remain suspended in the air ar be spread by casual contact". CARSWELL is not equipped with the proper engineering controls nor does CARSWELL have enough negative pressure isolation rooms(NPIR) to house infected inmates and neither the NPIRs or the engineering controls comply with the current CDC recommendations.

14. The BOP via the governing/managing staff of CARSWELL neglegently failed to require staff that interacts with inmates with potentially communical

Pg.5

diseases to wear an appropriately fitted NIOSH-certified Respirator(N95), as required by BOP Policy No. 6190.04, which states, "when transporting the inmate in a vehicle or when interacting with the inmate in a negative pressure room, special respirator precautions will be taken" and "escort personnel will wear an appropriately fitted NIOSH-certified Respirator (N95) whenever interacting with the inmate in a room or closed environment".

15. The BOP via the governing/managing staff of CARSWELL negligently failed to provide NORMAN a minimum of 45 square feet of sleeping space, as required by BOP Policy No. 1060.11, which states, "multiple occupancy housing areas (in minimum security facilities) if equal to or greater tha 120 square feet or more, rated capacity is computed by dividing the total space of each sleeping area by 45 square feet". Using BOP Policy as state above, NORMAN'S cell/room should have been occupied by four inmates, but was occupied by six inmates, contrary to BOP Policy No. 1060.11, and Creating the overcrowded conditions that the policy was written to preven and restricting NORMAN'S ability to keep herself safe from contracting an infectious disease by remaining a safe distance from others while sleepin

16. The BOP via the governing/managing staff of CARSWELL negligently failed to provide NORMAN a minimum of any fresh recirculated filtered air, as required by BOP Policy No. 1600.11 and OSHA requirements, which states, "institutions built prior to 1990 must provide at least 10 cubic feet of fresh recirculated filtered air per minute per person must be provided for inmate cells/rooms". None of the rooms at CARSWELL camp have any form of ventilation. In fact the ventilation system throughout the entire facility, with the exception of Food Service, Medical clinic and Laundry, is completely disabled. Contrary to BOP Policy No. 4200.12 and the Americ Society of Heating and Refrigeration and Air Conditioning Engineers(herei after ANSI/ASHRAE)Standard 62.1, Ventilation for Acceptable Indoor Air

Quality), which states, "institutions must provide minimum ventilation rates to maintain human comfort in accordance with the Guide Book for the American Society of Heating and Refrigeration and Air Conditioning Engineers(ANSI/ASHRAE Standard 62.1, Ventilation for Acceptable Indoor Air Quality)." Improper ventilation systems attribute to the rapid sprea and/or exposure of airborne infectious diseases, resulting in NORMAN contracting an infectious disease.

17. The BOP via the governing/managing staff of CARSWELL negligently failed to enforce the institution written Exposure Control Plan (hereinafter "ECP"), 29 CFR 1910.1030(Blood Pathogens). CARSWELL is the only female medical facility in the BOP, as such the institution houses what is considered a "special population" by the BOP's definition, a female population. Females have monthly menstrual cycles. Menstruation, a discharging of blood, secretions, and tissue debris from the uterus that recurs in nonpregnant breeding age primate females at approximately monthly intervals(as defined in Merriam-Webster's Collegiate Dictionary, Eleventh Edition), exposes NORMAN to bloodborne pathogens and infectious diseases via these blood pathogens on a daily basis via laudry services and facility restrooms. BOP Policy No. 6190.04 states that, "Universal Precautions (Standard Precautions), an infection control method, require all employees and inmates to assume that all human blood and specified human body fluids are infectious for HIV, HBV, and other bloodborne pathogens."

18. The BOP via the govening/managing staff of CARSWELL negligently failed to provide the minimum hot water temperature required to kill bloodborne pathogens and infectious diseases via washing machines. CARSWELL camp does not provide 160° degree hot water for laudering services. The facili is a female facility, therefore, NORMAN is exposed to bloodborne pathoger and infectious diseases via female menstruation. BOP Policy No.4200.12

Pg.7

and No. 1600.11, states the following, "the wash cycle temperature is to be a minimum of 160° degrees Fahrenheit for laudry washer".

19. The BOP via the governing/managing staff of CARSWELL negligently failed to operate a plumbing system in compliance with the standards stated in the International Plumbing Code(IPC). The plumbing system at CARSWELL includes the use of galvanized pipes, contaminated water as a result of the use of galvanized pipes,water with a yellow tint, water with an odor, and water containing bloodborne pathogens and viruses, an causative agent of an infectious disease, all in violation of the International Plumbing Code(hereinafter "IPC"). BOP Policy No. 4200.12 states the following, "Al work related to new and existing systems must meet the requirements of th latest version of the International Plumbing Code(IPC), Chapter 14. Plumbing."

20. The BOP via the governing/managing staff of CARSWELL negligently failed to provide NORMAN with the medication required to reduce her risk of death and/or severe illness. NORMAN was over the age of 50 with a BMI ove 40 with a history of Respiratory illness residing in a high risk congregated environment, all criteria that qualified NORMAN to be prescribed Paxlovid, Veklury or Lagevrio to reduce her risk of severe illness or death consistent with the standard of care within the community for persoi similary situated. BOP Policy No. 6031.04 states the following, " Health care will be delivered to inmates in accordance with proven standards of care " and "current accepted standards of care will be used as a reference for developing the treatment plan". CDC Guidance and current Community Standards of Care required NORMAN to receive the above stated Covid risk reducing medication, the failure to provide the medication resulted in her injury.

Pg.8

21. The BOP via the govening/managing staff of CARSWELL negligently failed to provide NORMAN with the medical staff required to administer medical care consistent with the community standard of care. NORMAN tested positi for Covid-19 on October 28, 2022 and was subsequently placed in "medical isolation", which was in her assigned room, room 224. NORMAN was then denied medical care for the initial five days of her medical isolation, which also denied her access to medication needed during that stage of her illness. BOP Policy No. 6031.04 and No. 6010.04 state the following, "Emergency or urgent care services(potentially infectious conditions, etc will be available 24 hours daily" and "a health services staff member visits inmates daily to provide necessary medical care, emergency medical care is always available either at the institution or from the community"

22. The BOP via the governing/managing staff of CARSWELL negligently failed to forecast, identify and fill all vacancies within the medical staff. CARSWELL is a medical center and must provide adequate number of medical staff in order to provide NORMAN with medically necessary care. NORMAN wa: not provided care during the intial five days of her medical isolation du to CARSWELL's shortage of medical staff at that time. BOP Policy No.3330.i section 4, states the following, "failure to communicate and coordinate the recruitment and placement of physicians, psychiatrists, and dentists among local, regional, and national levels can result in delays in fillin; vacancies and inability to provide a high level of professional medical care for inmates.

23. The BOP via the governing/managing staff of CARSWELL negligently failed to authorize TRELEGY(medication for individuals diagnosed with severe COPI and UMBREVLY(medication for migraines), both Non-Formulary medications, ar prescribed for NORMAN by a specialist and/or required for the effective treatment severe COPD and Demyelinating Disease as approved by the FDA.

Pg.9

BOP Policy No. 6360.01 states the following, "authorization for use of items not on the national formulary must be requested from the Medical Director through the BOP Chief Pharmacist, using the "Non-Formulary Drug Authorization form." NORMAN'S request for the above stated medications have been denied and no attempt was made to fill the medication orders. These failures resulted in NORMAN'S injury.

24. The BOP via the governing/managing staff of CARSWELL negligently failed administer the CARES ACT in compliance with the statutory law and Congrssional intent. NORMAN qualified for CARES ACT and should have been transferred to home confinement prior to October 28, 2022, which would have removed NORMAN from the environment of a correctional facility, inherent risks of congregate settings that allow contagious viruses to thrive. Instead, contrary to the statutory law, inmates with a history of violence, gang affiliation(specifically Aryan Brotherhood, Tango-Blast, and Cartels were processed and approved because those inmates are white and/or of caucasian descent, and these inmates were healthy, Care Level 1 with minimal or no Covid-19 medical risk factors. This negligent act is the direct result of NORMAN'S injury.CARES Act, Public Law 116-136 sec. 12003(b)(2), 134 Stat. 281, 516(2020).

25. The BOP via the governing/managing staff of CARSWELL negligently failed to "fully" implement the First Step Act of 2018, Public Law No. 115-391, by the statutory deadline of January 15, 2022. NORMAN has completed programs and classes to earn FSA credits that equal the time that she has remaining on her sentence. But the BOP has miskeyed information and data in the system that calculates First Step Act . The start date and the stop date  for program participation on the FSA Recidivism Risk Assessmen (PATTERN 01.03.00)form, is keyed in as the same date. The failure to key the data into the system correctly disables the systems ability to auto

calculate NORMAN'S First Step Act credits. NORMAN has completed over 168 programs and/or classes and has earned 8,340 First Step Act credits, and she has 7,990 days remaining on her sentence. NORMAN should have been transferred to home confinement prior to October 28, 2022. These failures resulted in NORMAN'S injury.

26. The BOP was paid $75,000,000 each year for the implementation of the First Step Act(beginning in January 2019, and millions of dollars to implement the CARES Act. BOP, in receiving these federal funds while simultaneously denying home confinement to NORMAN a medically vulnerable individual and while denying NORMAN the First Step Act credits earned fo programs and classes completed is contrary to Congressional intent, unlawful and misrepresentation that is tantamount to fraud. All resultin in NORMAN'S confinement to secure custody and subsequent infection with a contagious disease that has caused irreparable harm to her health.

27. The BOP via the governing/managing staff of CARSWELL negligently failed test the lead levels in the water system. The water at CARSWELL camp sho evidence of calcium build up and the water exhibits discoloration that i indicative of a high level of contamination, specifically the water has an odor and a yellow tint. BOP Policy No. states that "every five years the lead level in the water system must be tested as required by 40 CFR 141(No. 1600.13- National Environmental Protection Policy and No. 4200.1 A testing program should be in existence that documents institution sanitary surveys. Federal, State and Local regulations require the collection of water samples that must be analyzed by a state of Texas certified laboratory. The failure to ensure that the water consumed by NORMAN is lead free and contamination free has resulted in herinjury and is a violation of her eighth amendment rights.

28. The BOP via the governing/managing staff of CARSWELL negligently failed to enforce it's policy for Administrative Remedies. NORMAN, in an attempt to serve notice to the managing staff of CARSWELL regarding the presence of water contamination, the absence of hot water required for washing clothes the absence of an adequate ventilation system, over crowding of living quarters,inability to receive medication as prescribed by specialist, and her medical need to be transferred to home confinement, filed multiple administrative remedies. But the remedies were simply not answered and/or no response was provided at the local level(i.e. CARSWELL). The absence of a response at the local level generates a "rejection" at the Regional level and the Central level. Resulting in a denial of the Administrative Remedy process. BOP Policy No. 1330.18 states the following, "if accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once, filed, response shall be made by the Warden or CCM within 20 calendar days." and "staff shall respo in writing to all filed Requests or Appeals."(12. RESPONSE TIME). Failure to respond to NORMAN'S request is the direct result of her injury.

29. On October 28, 2022, NORMAN tested positive for an infectious Disease, Covid-19, as a result of this infection, NORMAN is now diagnosed with Severe COPD, Chronic Obstructive Pulmonary Disease, Long Covid Disease, Small Vessel Disease/Demyelinating Disease (damage to the brain and spinal Cord, and Gastro-Esophageal Reflux Disease(GERD). NORMAN WAS placed in medical isolation in her assigned room(224) on October 28, 2022. Due to underlying health conditions, specifically BMI over 40,and respiratory issues, NORMAN requested to see a DOCTOR to request Covid-19 risk reducing medication, but her requests were denied, and although she requested to see a docter several times during her initial five days of medical iso-lation, her request was denied,

Pg.12

and during the initial four(4) days of so called "medical isolation" NORMAN was not seen by any medical staff. During this second Covid-19 infection NORMAN complained of headaches, coughing, chest pains and excessi mucus production. She requested Tylenol, Mucinex and the "Covid Pill" A/K/A Paxlovid, Veklury or Lageviro, via a sick call form and verbally on day (5) five, when medical staff, LVN Tucker, made rounds to inmates held in "medic isolation". NORMAN received only Tylenol, all her other requests were denie and/or ignored. In response to NORMAN's request to see a doctor she was tol the following, "there is no more seeing a doctor, if you get to sick to be here, you will go to the hospital. The best thing to do is get vaccinated a and hope for the best. Oh, and by the way your lab results for your allergy test showed that you are allergic.....sorry," by LVN Tucker. NORMAN is not vaccinated due to a history of having adverse reactions to previous vac- cinations, her Mother's death 13 days after receiving the Pfizer Covid-19 Vaccine after developing a blood clot, and because she is allergic to Distearoyl-sn-glycero-3-phosphocholine, and ingredient in the Pfizer Covid-1 vaccine. Her allergic reaction causes facial and tongue swelling resulting i her throat closing and her ability to breath being severely restricted and possibly stopped resulting in her immediate death. Therefore, NORMAN is not able to receive the Covid-19 vaccine. However, her status as a medically vunerable individual as a result of her medical diagnosis' should have resulted in NORMAN receiving a form of what is called the "Covid Pill" A/K/A Paxlovid, Veklury, or Lagevrio, but although BOP claims to have this medication available, it was never offered to NORMAN as recommended by the CDC. As a result of not receiving and/or having access to antivirals recom- mended by the CDC for the medically vulnerable, NORMAN's medical conditions have worsened.

30. NORMAN was entrusted into the care and custody of the BOP on April 8,

2016 at the age of 44. NORMAN was healthy with no medical (physical) diagnosis. Prior to contracting Covid-19 NORMAN reported to sick only once in her five years of incarceration, as BOP medical records will confirm. After contracting Covid-19 in August 2020, NORMAN was diagnosed with Chronic Obstructive Pulmonary Disease (hereinafter "COPD"), Gastro-Esophageal Reflux Disease ( hereinafter "GERD"), and Headache, unspecified. Resulting in the following medications being prescribed; 1.)Albuterol Inhaler HFA(8.5gm), Mometasone Furoate Inhaler 220 MCG, Tiotropium Bromide Handi-haler 30 Cap 18 MCG inhaler, and Propanolol 25mg Tab.

31. On October 28, 2022, NORMAN tested positive for Covid-19 for the second time. As confirmed in NORMAN's BOP medical records, NORMAN reported to sick call multiple times after this second Covid -19 infection complaining of the following 1.)an increase in mucus production resulting in chest pain and increased difficulty breathing. 2.) an increase in the intensity and frequency of headaches/migraines. 3.)an increase in the use of her rescue inhaler (Albuterol Inhaler HFA(8.5gm), and 4.) an increase in obstruction in her nasal cavity and sinus cavity. NORMAN was seen by a Pulmonologist and received a complete series of Pulmonary Function Tests (hereinafter "PFT"). The results of the PFT showed that NORMAN was suffering from Severe COPD and Asthma. The Pulmonologists prescribed the following medications to help mitigate NORMAN'S symptoms; 1.) TRELEGY, an inhaler FDA approved specifically for individuals suffering with COPD. 2.) A Nebulizer, a machine that reduces Albuterol to a fine spray for use as a breathing treatment (three times a day). 3.) Albuterol Inhaler HFA (8.5gm), and 4.)Fluticasone Prop 50mcg, 16ml Nasal Spray. NORMAN's Care Level was increased from Care Level 1 to Care Level 2, and she was diagnosed with Long Covid Disease, Asthma and Severe COPD.

32. NORMAN was assigned to a 13 x 15 square foot room occupied by 6 females. The room per BOP Policy should have been occupied by no morethan four females. The inability to adhere to BOP Policy regarding the number of inmates that should be assigned to a room/cell in a minimum security facility cultivated an environment that allowed NORMAN to be continously exposed to Covid-19 and infected for the second time with Covid-19. All of the women assigned to NORMAN'S room, 224(Camp West) tested positive for Covid-19. FMC Carswell's failure to follow BOP Policy and BOP Guidance Protocol for Covid-19 resulted in NORMAN'S second Covid-19 infection and irreparable harm to her health.

33. NORMAN'S second MRI, conducted outside of FMC Carswell, stated in the findings that Demyelinating Disease could NOT be ruled out. A Demyelinatii Disease is any condition that results in damage to the protective coverin{ (myelin sheath) that surrounds nerve fibers in the brain and spinal cord. Small Vessel Disease refers to a group of pathological processes with various aetiologies that affect the small arteries, arterioles, venules, and capillaries of the brain. Small Vessel Disease generally leads to a diagnosis of Dementia. Both Demyelinating Disease and Small Vessel Disease ultimately will disrupt optimal brain function.

34. NORMAN'S second Pulmonary Functioning Test ("PFT"), conducted outside of FMC Carswell after her second Covid-19 infection , stated in the findings "severe airflow obstruction, showing FEV1 of 52% only, low lung volumes, and hyper - inflation and air trapping" Interpretation "Severe Obstructive Airways Disease(COPD) and Asthma, and Long Covid Disease. COPD is a permanent, progressive, incurable and potentially disabling respiratory disease. It is characterized by persistent difficulty in expelling (exhaling) air from the lungs resulting in loss of lung function. Long Covid Disease or Post Covid Disease refers to long-term effects from a Covid-19 infection.

35. Covid-19, an infectious disease that caused a three year Global Pandemic, is now considered endemic, and unlike the FLU, some people never reclaim their preinfection health status after contracting Covid-19. The CDC has reported that a Covid-19 infection alone, regardless of the symptoms suffered by the infected individual, can cause irreparable harm to the health of those infected. Multiple studies conducted by the Mayo Clinic, John Hopkins Hospital and the CDC have confirmed that a Covid-19 infection can leave a person with permanent heart damage, lung damage, respiratory and pulmonary damage, nerve damage throughout the body and specifically nerve damage within the brain including a complete loss of brain function After nearly 5 years of medical studies have warned of the damage done to the body of a person infected with Covid-19, and specifically the permanen injury inflicted upon the body of a previously healthy obese person. NORMAN'S BMI was 42.9 prior reinfection with Covid-19 and 39.9 prior to her initial Covid-19 infection. NORMAN was a high risk medically vulnerabl person and should have received an antiviral medication within the first five days of Covid-19 infection per CDC Guidance.

36. FMC Carswell was one of the most in prisons in the country during the Covid-19 pandemic. FMC Carswell's local A.F.G.E. union filed a complaint with the offices of Senator John Cornyn and U.S. Congressman Marc Veasey to complain about the hazdous conditions at the facility and the "cavalier' attitude of the administration regarding the need to follow BOP Covid-19 Guidance/Protocol. District Courts around the country determined that the number of Covid-19 cases and the conditions at the facility were grounds for compassionate release. The Department of Justice office of the Inspector General and the CDC have reported that the configuration of prisons like FMC Carswell and the congregated environment make social distancing "impossible". Furthermore, the ventilation system throughout

and OSHA Regulations. Covid-19 is transmitted from person to person mainly through respiratory droplets. Adequate ventilation in the facility is essential mitigating inmate exposure to any infectious airborne disease. Failure to update the facility as required by BOP Policy, OSHA Regulations and CDC guidance in combination with the failure to transfer NORMAN to home confinement to allow her to practice optimal infection prevention control measures. Denied NORMAN the opportunity to keep herself safe from Covid-19 reinfection and increased her risk to contracting Covid-19 again.

37. FMC CARSWELL was previously accredited by the Joint Commissions, facility 242703, for Behavior Health, Nursing Home, and Ambulatory Healthcare Center, but the Joint Commissions accrediation expired on December 21, 2020, and has not been reinstated due to the many issues plaguing the facility. The Department of Justice Office of Inspector General has submitted multiple reports detailing the conditions of BOP facilities including the infra-structure, presence of mold throughot facilities, presence of asbestos, contaminated water systems and excessive staff shortages throughout BOP. THE Office of Inspector General (hereinafter "OIG") has also reported on the fraud, corruption and falsification of documentation of BOP records regarding inspections and medical records. While the BOP is in the process of making many changes to improve the conditions and infrastructures of the buildings throughout the BOP, including FMC Carswell, which is currently operating at half capacity due to an active construction project at the camp. NORMAN a medically vulnerable inmate should not be exposed to hazardous living conditions in the interim.

The BOP via the governing/managing staff of CARSWELL negligently failed to act for the benefit of NORMAN in all matters within the scope of their Trustee/beneficiary releationship, as required by BOP Policy No. 4500.12 and DOJ Circular No.2244(Terms of the Trust) and 31 U.S.C § 1321(a)(21), which states, Funds of Federal Prisoners are specifically identified by Congress as trust funds designed for the bencfit of inmates with rules set forth in DOJ Circular No.2244 that impose fiduciary obligations on the BOP.

38. DUTY UNDER A NEGLIGENT TORT CLAIM

A duty is a legally enforceable obligation to conform to a particular standard of conduct, and is an essential element of a negligence tort clai under Texas law. NORMAN is a federal prisoner under the control of the BOP via the involuntary custody granted via a criminal judgment signed on April 8, 2016 and May 19, 2019, thus creating a "special relationship" between NORMAN and the BOP(via the U.S. Attorney General). This "special relationship" triggers an affirmative duty to protect NORMAN by exercising a reasonable degree of care. The BOP has affirmed knowledge of the duty owed via it's written Program Statements, and failure to adhere to those Program Statements is a breach of the trust placed in the BOP. Making the USA liable for the irreparable harm done to NORMAN'S health as a result of the negligent conduct of it's employees.

39. The negligent conductstated in paragraphs 1-38 are the proximate cause of NORMAN'S injuries and damages. NORMAN, previously healthy, suffers from low lung volumes, severe airflow obstruction, and hyperinflation and air trapping. Resulting in a diagnosis of Severe COPD and Asthma, as well as Long Covid Disease. These are progressive, permanent, incurable and potentially disabling respiratory diseases that make it difficult for NORMAN to breathe. The damage done to the myeline lining in NORMAN"S brain has caused permanent damage to NORMAN'S brain and spinal cord thats is the cause of the debilitating migraine headaches that she suffers from and a diagnosis of Advanced Degenative Disease along her spinal cord with mild sclerosis. This again a progressive, permanent, incurable and potentially diabling diseases. The harm done to NORMAN can not be repaired and she incur substantial medical bills as a result. Therefore, NORMAN is entitled to damages from the USA under FTCA for negligence in an amount to be determined at trial, but exceeding seventy-five thousand dollars($75,000).

The defendants enjoy a great deal of authority and discretion in regards to how, why, if and when to exercise that authority and/or discretion. However, as law enforcement officers, they are obligated to adhere to BOP Policy, Federal Law, BOP Standards of Employee Conduct, and the Master Agreement between the FBOP and the Council of Prison Locals(American Federation of Government Employees, and to provide accurate and honest information in relation to NORMAN'S right to liberty. But the defendants have willfully, wantonly, recklessly, negligently, and with deliberate indifference, abused the discretion and authority given to them by administering the CARES Act and the First Step Act in an arbitrary and capricious manner by actively practicing racial discrimination, misrepresentation and deceit to deny NORMAN FSA Time Credits that have been earned and CARES Act Home Confinement for the medically vulnerable, both of which has caused NORMAN'S excessive and/or false imprisonment as defined in 28 U.S.C. §2680 and continuous irreparable harm to her health. The damages are as follows;

    a. Plaintiff NORMAN has suffered physical injuries and required medical treatment

    b. Plaintiff NORMAN has suffered physical pain and suffering

    c. Plaintiff NORMAN has suffered mental anguish

    d. Plaintiff NORMAN has suffered a permanent injury

    e. Plaintiff NORMAN will incur future medical expenses in and about an effort to treat her injuries

    f. Plaintiff NORMAN has suffered an impairment in her earnings potential and/or loss of future income or future earning capacity.

Pg.19

40. JURISDICTION

"In 1946, Congress passed the FTCA, which waived sovereign immunity of the United States for certain torts committed by federal employees'acting within the scope of their employment. NORMAN'S claim is against the United States for money damages exceeding seventy-five thousand dollars($75,000), for irreparable harm to her health, specifically, damage to her lungs, pulmunary system, brain and spinal cord caused by the negligent or wrongfu act or omission of federal employees while acting within the scope of his/ her office or employment, and under circumstances where the United States, if a private person, would be liable to NORMAN in accordance with laws of the State of Texas. Therefore, this Court has subject matter jurisdiction. Additionally, jurisdiction is also found under the provision of 28 U.S.C §1331 in that a claim arises under federal law and that the United States Government, through its Federal Bureau of Prisons and CARSWELL, is a defendant. Jurisdiction is founded under the provisions of 28 U.S.C. §1332 §1332(a) et seq., which grants this Court Jurisdiction in civil actions on the basis of diversity of citizenship where the matter in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000).

Futhermore, jursidiction is also found under the provision of 28 U.S.C. §2680(h), known as the "law enforcement proviso", which also waives sovereign immunity "with regards to acts or omissions of investigative or law enforcement officers for any claim arising out of false imprisonment, abuse of process, deceit, misrepresentation, libel, slander and interferen with contract rights. BOP employees have law enforcement authority as stated by the Supreme Court in Ali v. FBOP 552 U.S. 214,128 S. Ct. 831(200

COUNT ONE

NEGLIGENT/WANTON CONDUCT AGAINST DEFENDANTS

41. Plaintiff adopt and incorporate by reference all allegations of the preceding paragraphs herein.

42. At the aforesaid time and place and for some time prior thereto, Defendants' care for NORMAN, while testing positive for Covid-19, while in so called "medical isolation", and after NORMAN'S second Covid-19 infection fell below the applicable standard of care and the Defendants negligently and/or wanton] caused the injuries herein with the Plaintiff.

43. Said conduct was the proximate cause of NORMAN'S injuries and damages. WHERE WHEREFORE, NORMAN demands judgment against defendants, jointly and severally, in a sum of compensatory and/punitive damages in excess of the jurisdictional limits of this Court, to be determined by a jury, which will fairly and adequately compensate NORMAN for the damages and injuries she sustained, together with interest from the date of the incident and the costs of the proceeding.

Pg.21

COUNT TWO

MEDICAL NEGLIGENCE AND/OR WANTONNESS

44. Plaintiff hereby adopts all of the previous factual averments contained in th preceeding paragraphs and incorporates them by reference herein;

Defendants provided medical care wherein NORMAN was a prisoner;

Defendants' employees, staff, medical professionals knew and/or in exercise of reasonable care had reason to know that NORMAN, a Care Level 2 Chronic Care inmate with multiple medical vulnerabilities, needed to be treated and cared for in a manner consistent with CDC Guidance regarding proper care for individuals at risk of severe illness and/or death when contracting Covid-19, the community standards of care, and BOP Policy;

45. Defendants employees, staff, medical professionals, **however** did not provide NORMAN with medical care that is consistent with community standards of care, BOP Policy, and CDC Guidance for proper care of individual at risk of severe illness and/or death when contracting Covid-19.

46. Defendants had a legal duty to possess and exercise the same degree of care, skill and diligence commonly possessed and exercised by the same or similarly situated medical centers practicing medicine within the national medical community under the same facts and circumstances as set out above as well as to those requirements established by state and federal law. Defendant owed the following, but not limited to the following duties of care to NORMAN

Pg.22

a.) To timely and proper care and treatment for NORMAN;

b.) To provide employees, staff, medical professionals
training in the proper manner of care and treatment for individuals with
severe risk of illness and/or death when contracting Covid-19.

c.) To provide employees, staff, medical professionals
training in prescribing and dispensing medication based on diagnostic
test results, symptoms and medical diagnosis, consistent with community
standards, BOP Policy and FDA medication approval;

d.) To properly monitor the actions of employees, staff, medical professional

e.) To employ personnel, staff, medical professionals,
who understand and do provide medical care to inmates that is consistent
with community standards, BOP Policy and CDC Guidance regarding care for
individuals at risk for severe illness and/or death when contracting
Covid-19;

f.) To provide an adequate number of medical staff, personnel,
needed according to the inmate to medical staff ratio, to
ensure that NORMAN receives the proper medical treatment and care that is
consistent with community standards, BOP Policy and CDC Guidance regardin
care for inmates at risk of severe illness and/or death when contracting
Covid-19;

g.) To properly and routinely assess and/or evaluate the medical needs of
NORMAN and to provide the appropriate medical care, treatment and
medication to meet those needs consistent with community standards, BOP
Policy, and CDC Guidance for individuals at risk of severe illness and/or
death when contracting Covid-19;

h.) To properly assess NORMAN'S medical needs;

i.) To adhere to instructions and/or treatment plans prescribed by Specialist.

j.) To report and investigate physical symptoms and/or medical issues

Pg.23

k.) To timely schedule a time for NORMAN to see a doctor when requested;

l.) To provide the medication needed to reduce the risk of severe illness and/c death, i.e any version of what is known as the Covid Pill (Paxlovid, Veklur or Lagevrio);

m.) To provide mediaal staff during the entire lenght of medical isolatiom that are trained regarding CDC Guidance, BOP Policy, and the community standards of care;

n.) To properly address NORMAN'S symptoms and complaints, and prescribe medica- tion as required and requested;

Defendant's negligently and/or wantonly, and/or with deliberate indifferenc breached the standard of care for similary situated healthcare providers by the following, but not limited to the following actions and/or inactions and/or omissions;

a.) Failing to properly and timely treat and care for NORMAN

b.) Failing to provide employees, staff, medical professions, trained to provide medical care consistent with community standards, BOP Policy, and CDC Guidance of medical care of individuals at risk for severe illness and/or death when contracting Covid-19;

c.) Failing to properly monitor the actions of employees, staff, medical professionals, **while providing care for NORMAN in medical isolation;**

d.) Failing to employ personnel, staff, medical professionals, who are knowledgable of BOP Policy, community standards of care, and CDC Guidance for individuals at risk for severe illness and/or death when contracting Covid-19;

e.) Failing to provide medical staff during the entire length of medical isolation that are trained regarding CDC Guidance, BOP Policy, and the community standards of care;

Pg. 24

f.) Failing to provide an adequate number of medical staff, personnel, needed according to the inmate to medical staff ratio, to ensure that NORMAN receives the proper medical treatment and care that is consistent with community standards, BOP Policy, and CDC Guidance for individuals at risk for severe illness and/or death when contracting Covid-19;

g.) Failing to properly assess NORMAN'S medical needs;

h.) Failing to report and investigate physical symptoms and/or medical issues

i.) Failing to timely provide NORMAN with access to a Doctor as requested

j.) Failing to administer medications needed to treat reported symptoms;

k.) Failing to provide doctors, nurses, medical professionals that are properly trained and knowledgable of BOP Policy, CDC Guidance for individuals at risk of severe illness and/or death from contracting Covid-19, and community standards of care.

l.) Failing to adhere to and/or implement policies and procedures specific to Covid-19 and to ensure that medical staff, are properly trained in community standards of care regarding the adminstration and dispensing of medications and providing basic medical care to individuals that have contracted Covid-19.

m.) Failing to adhere to and/or implement policies and procedures specific to providing care for individuals at risk of severe illness and/or death from contracting Covid-19;

n.) Failing to keep NORMAN safe from contracting Covid-19 by adhering to CDC Guidance for Correctional Facilities and individuals at risk of severe illness and/or death from contracting Covid-19, the CARES Act, and the FSA;

47. As a direct result of the above described negligent and/or wanton actions and/or inactions of the Defendants, both named and unnamed, Plainiff NORMAN was caused injury resulting in irreparable harm to her health.

48. WHEREFORE, Plaintiff, NORMAN, demands judgment against defendants, jointly

Pg.25

and severally, in a sum of compensatory and/or punitive damages in excess of compensatory and/or punitive damages in excess of the jurisdictional limits of this Court, to be determined by a jury, which will fairly and adequately compensate NORMAN for the damages and injuries she sustained, together with interest from the date of the incident and the costs of the proceeding.

COUNT THREE

Violation of Constitutional Rights

Pursuant To 42 U.S.C. §1983

49. Plaintiff incorporates herein by reference the allegations contained in the proceeding paragraphs.

50. Upon information and belief, Defendants, acting under color of state and federal law, violated NORMAN'S Eighth Amendment right to not be subjected to cruel and unusual punishment.

51. Defendants acted with deliberate indifference toward the serious medical needs of NORMAN while a prisoner at FMC Carswell. This includes ignoring the BOP's policy and stated written agreements to provide NORMAN with a safe living environment that is maintained in compliance with routine health and safety codes established by the State of Texas, OSHA, and Federal Law.

52. Defendants knew, or should have known, that Congress enacted Section 12003(b)(2) in the context of heightened pandemic related risks that the federal prison system was experiencing, because of the close quarters and dense populations of inmates and guards created an environment conducive to the spread of the virus, and that pandemic risks in prison facilities might linger well beyond the official end of the pandemic emergency.

53. Defendants knew, or should have known, that Congress intended to permit home confinement placements granted under section 12003(b)(2) of the CARES Act to outlast the emergency period. Giving the BOP discretion to determine the length of home confinement placements with an explicit delegation of authority; "as the Director determines appropriate". Further stating that, under section 3621(a), BOP has additional authority to continue extended home confinement placements and their associated "ongoing administrative duties" beyond the emergency period.

Pg.27

54. Defendants knew, or should have known, that a construction project was pending for FMC Carswell Camp, which will involve the removal of carpet contaminated with asbestos, drywall contaminated with black mold, sand blasting , which releases hazardous material into the air, and the removal of galvinized pipes contaminated with lead. All are hazardous to NORMAN'S health and exacerbates her respiratory conditions.

55. Defendants knew, or should have known, that the construction project would result in the closing of the Westside of the FMC Carswell Camp, and the housing of NORMAN in a manner that exceeds the building's design capacity, BOP's Rated Capacity Policy, and in a manner that is contrary to CDC Guidanc for Correctional Facilities(Covid-19), and in violation of the Fire and Life Safety Codes.

56. Defendants knew, or should have known, that housing NORMAN in a manner that exceeds BOP Rated Capacity and the building's design capacity increased NORMAN'S risk of contracting an infectious disease, specifically Covid-19, and was contrary to CDC Guidance for individuals at risk of severe illness and/or death from contracting Covid-19.

57. Defendants knew, or should have known, that the FMC Carswell Camp facilities lacks the ventilation system required, per CDC Guidance and BOP Policy, to provide the air quality needed to protect NORMAN from rapid spread of an airbourne infectious disease, specifically Covid-19, and ensure the health and safety of NORMAN, a medically vulnerable inmate at risk of severe illnes and/or death from contracting Covid-19.

58. Defendants knew, or should have known, that the facility at FMC Carswell Camp lacks a boiler system that is maintained in compliance with BOP Policy, OSHA Standards and/or the State of Texas Boiler Law. The failure to operate a boiler system in compliance with the above stated agency policies, federal standards, and Texas Law, exposed NORMAN to communicable diseases, specifically Covid-19, via a contaminated water system.

Pg.28

59. Defendants knew, or should have known, that the facility at FMC Carswell, does not maintain the plumbing system in compliance with Federal Law, BOP Policy, or State of Texas Law. FMC Carswell is a female facility. Females, according to BOP Policy, are a "special population", due to the special accomodations and services required to house female inmates. Sanitary napkin are "special" items required in female facilities due to females having a menstrual cycle. Multiple females equate to multiple menstrual cycles, and daily exposure to blood. The failure to provide hot water, at the required temperature, for the purposes of laundering clothes, exposed NORMAN to blood, blood pathogens and various communicable diseases, specifically Covid-19, twice a week, when she washed her clothes. Resulting in NORMAN contracting Covid-19 for a second time.

60. Defendants knew, or should have known, that NORMAN was otherwise healthy until she contracted Covid-19 on both July 28,2020 and October 28,2022. Which has resulted in an increase in her BOP Care Level from Care Level One to Care Level Two and a diagnosis of the following; 1.) Severe Chronic Obstructive Pulmonary Disease(COPD),2.) Asthma, 3.) SOB with Exertion since Covid-19, 4.) Long Covid Disease, 5.) Small Vessel Disease, 6.) GERD, and 7.) Morbid Obesity(BMI 41.9). All of which qualified NORMAN for CARES Act Home Confinement.

61. Defendants knew, or should have known, that Covid-19, unlike the FLU, can cause permanent damage to NORMAN"S health each time that she contracts the disease, and due to the dormitory style living quarters, congregated living environment, and the nonfeasibility of social distancing in a correctional facility, NORMAN was not able to protect herself and keep herself safe from Comtracting Covid-19. Which multiple medical studies have shown, result in the permanent damage of various organs in the body, including the respirator system, lungs, heart, GI Track, nervous sytem, including the brain, and the Pulmonary System.

Pg.29

62. Defendants knew, or should have known, that the BOP settled a Class Action Lawsuit with inmates at Lompoc Prison. SEE Order re:Joint Motion for Final Approval of Class Action Settlement: Garries v. Louis Milusnic, No. 2:20-CV-04450-CBM(Docket No. 863 Oct. 11, 2022, Lompoc Settlement, and that NORMAN, the same and/or similarly situated inmate should have received the same benefit and protection granted in the above stated Class Action Lawsuit.

COUNT FOUR
Negligent/Wanton Conduct

63. Planitiff adopts and incorporate by reference all allegations of the pre-ceding paragraphs herein.

64. At the aforesaid time and place and for some time prior thereto, Defendants care for NORMAN fell below the applicable standard of care and they negligently and/or wantonly caused the injuries herein with NORMAN.

65. Said conduct was the proximate cause of NORMAN'S injuries and damages. WHEREFORE, NORMAN demands judgment against defendants, jointly and severally in a sum of compensatory and/or punitive damages in excess of the juris-dictional limits of this Court, to be determined by a jury, which will fairly and adequately compensate NORMAN for the damages and injuries she sustained, together with interest from the date of the incident and the costs of the proceeding.

Pg.30

62. Defendants knew, or should have known, that the BOP settled a Class Action Lawsuit with inmates at Lompoc Prison. SEE Order re:Joint Motion for Final Approval of Class Action Settlement: Garries v. Louis Milusnic, No. 2:20-CV-04450-CBM(Docket No. 863 Oct. 11, 2022, Lompoc Settlement, and that NORMAN, the same and/or similarly situated inmate should have received the same benefit and protection granted in the above stated Class Action Lawsuit.

COUNT FOUR

Negligent/Wanton Conduct

63. Planitiff adopts and incorporate by reference all allegations of the preceding paragraphs herein.

64. At the aforesaid time and place and for some time prior thereto, Defendants care for NORMAN fell below the applicable standard of care and they negligently and/or wantonly caused the injuries herein with NORMAN.

65. Said conduct was the proximate cause of NORMAN'S injuries and damages. WHEREFORE, NORMAN demands judgment against defendants, jointly and severally in a sum of compensatory and/or punitive damages in excess of the jurisdictional limits of this Court, to be determined by a jury, which will fairly and adequately compensate NORMAN for the damages and injuries she sustained, together with interest from the date of the incident and the costs of the proceeding.

COUNT FIVE

Prima Facie and/or Per se Negligent Conduct

66. Plaintiff adopts and incorporate by reference all allegations of the preceding paragraphs herein.

67. At the aforesaid time and place and for some time prior thereto, Defendants care for NORMAN fell below the applicable standard of care and they negligently and/or wantonly caused the injuries herein with NORMAN.

68. As a result of this conduct, Defendants violated Texas Health and Safety Code, Chapter 81.101, Chapter 321 Mental Health Care Facilities, Patient Bill of Rights, Chapter 755-Texas Boiler Law, Texas Administrative Code, Chapter 65-Texas Boiler Rules, Texas Civil Practice and Remedies Code, Chapter 74-Medical Liability Act, Texas Communicable Disease Law.

69. Said conduct was the proximate cause of NORMAN'S injuries and damages, and is prima facie and/or per se negligence.

70. WHEREFORE, NORMAN demands judgment against defendants, jointly and severally in a sum of compensatory and/or punitive damages in excess of the juris-dictional limits of this Court, to be determined by a jury, which will fairly and adequately compensate NORMAN for the damages and injuries she sustained, together with interest from the date of the incident and the costs of the proceeding.

COUNT SIX

Negligent and/or wanton Supervision or Training

71. Plaintiff hereby adopts all of the previous factual averments contained in paragraphs numbered (1-70) and incorporates them by reference herein.

72. Defendants negligently and/or wantonly failed to supervise and/or train their employees, staff, medical professionals, specifically, MERCADO, SMITH-BRANTON FLEINER, MALLARD, REX.

73. Defendants negligent and/or wanton failure included, but was not limited to the failure to train their employees, staff, medical professionals, specifical MERCADO, SMITH-BRANTON, FLEINER, MALLARD, REX.

74. Defendants served as the employer, supervisor and/or master of their employee staff, medical professionals , specifically, SMITH-BRANTON, MERCADO, MALLARD. FLEINER, REX, who negligently, willfully, wantonly and /or with deliberate indifference failed to follow BOP Policy, Community Standards of Care, CARES Act, First Step Act, Federal Law and State of Texas Law.

75. Such conduct was the proximate cause of NORMAN'S injuries.

76. WHEREFORE, NORMAN demands judgment against defendants, jointly and severally, in a sum of compensatory and/or punitive damages in excess of the jurisdictional limits of this Court, to be determined by a jury, which will fairly and adequately compensate NORMAN for the damages and injuries she sustained, together with interest from the date of the incident and the costs of the proceeding.

COUNT SEVEN

Negligent and/or Wanton Hiring

77. Plaintiff hereby adopts all of the previous factual averments contained in paragraphs numbered 1-76 and incorporates them by reference herein.

78. Defendants negligently and/or wantonly hired **their** employees, staff, medical professionals in particular SMITH-BRANTON, MALLARD, REX, FLEINER, MERCADO **by failing to ensure** they were qualified and/or otherwise fit to occupy the position (i.e carry out the responsibilities, knowledgeable about BOP Policy, community standards of care and Federal and State Law), for which they were charged or rehiring them and/or continuing employment after receiving multiple complaints or racial discrimination, deceit, abuse of process, abuse of discretion and misrepresentation.

79. Defendants negligently and/or wantonly disregard the consequences of such failure to hire a **qualified employee, staff and medical professionals in particular, SMITH-BRANTON, MALLARD, REX, FLEINER, MERCADO.**

80. Such conduct was the proximate cause of NORMAN'S injuries. WHEREFORE, NORMAN demands judgment against defendants, jointly and severally, in a sum of compensatory and/or punitive damages in excess of the jurisdictional limits of this Court, to be determined by a jury, which will fairly and adequately compensate NORMAN for the damages and injuries she sustained, together with interest from the date of the incident and the costs of the proceeding.

COUNT EIGHT

Negligent and/or Wanton Retention

81. Plaintiff hereby adopts all of the previous factual averments contained in paragraphs 1-80 and incorporates them by reference herein.

82. Defendants negligently and/or wantonly retained their employees, staff, medical professionals, **in particular SMITH-BRANTON, MALLARD, REX, FLEINER, AND MERCADO.**

83. Defendant's employees, staff, medical professionals, in particular, SMITH-BRANTON, MALLARD, REX, FLEINER, MERCADO    was an unfit employee, **but Defendants continued to employ and/or** request the services of said employee, staff, medical professional,

84. Such conduct was the proximate cause of NORMAN'S injuries. WHEREFORE, NORMAN demands judgment against defendants, jointly and severally, in a sum of compensatory and/or punitive damages in excess of jurisdictional limits of this Court, to be determined by a jury, which will fairly and adequately compensate NORMAN for the damages and injuries she sustained, together with interest from the date of the incident and the costs of the proceeding.

COUNT NINE

VICARIOUS LIABILITY

85. Plaintiff hereby adopts all of the previous factual averments contained in paragraphs numbered 1-84 and incorporates them by reference herein.

86. Defendants served as the employer and/or master and/or supervisor of their employee, staff, medical professionals

Pg.34

87. Defendant's employees, staff, medical professionals **were** in the line and scope of employment in January 2019- **May 2023**   , at the the time of the incidents described herein.

88. Furthermore, negligent and/or wanton acts of Defendant's employees, staff, medical professionals **in January 2019-May 2023 have been ratified by the Defendants.**

89. Defendants are vicariously liable for the acts of their employees, staff, medical professionals

90. Such conduct was the proximate cause of NORMAN'S injuries. WHEREFORE, NORMAN demands judgment against defendants, jointly and severally, in a sum of compensatory and/or punitive damages in excess of the jurisdictional limits of this Court, to be determined by a jury, which will fairly and adequately compensate NORMAN for the damages and injuries she sustained together  with interest from the date of the incident and the costs of the proceeding.

<u>PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY</u>

Respectfully Submitted,

Alexis Carlette Norman
BOP Reg. NO. 49210-177

Certified Mail

7020 1290 0000 1384 1820

FMC Carswell
Alexis Carlette Norman
#49210-177
P.O. BOX 27137
FORT Worth, TX 76127
West Trinity



CERTIFIED MAIL®

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

7020 1290 0000 1384 1820

**Retail**

U.S. POSTAGE PAID
FCM LG ENV
NAVAL AIR STATION JRB
TX 76127
APR 25, 2025
76102
**$0.00**

**RDC 99**    S2324H504127-2



X-RAY

RECEIVED
APR 2 9 2025
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

⇔49210-177⇔
United States District
501 W 10TH ST
room 310
FORT Worth, TX 76102
United States